Lawrence **LANDRY** et al., Plaintiffs,

v.

Richard J. **DALEY**, Mayor of the City of Chicago, Cook County, Illinois; James Conlisk, Superintendent of Police of the City of Chicago, Illinois; John S. Boyle, Chief Judge of the Circuit Court of Cook County, Illinois; John J. Stamos, State's Attorney of Cook County, Illinois; Raymond F. Simon, Corporation Counsel of the City of Chicago, Illinois; Joseph I. Woods, Sheriff of Cook County, Illinois; Richard J. Elrod, Assistant Corporation Counsel, City of Chicago, Division of Ordinance Enforcement; Maurice W. Lee, Magistrate, Circuit Court of Cook County, Illinois; John S. Limperis, Magistrate, Circuit Court of Cook County, Illinois; John T. Burke, Joseph Ratkvich and Robert Kulovitz, Police Officers of the City of Chicago, Defendants.

No. 67 C 1863.

United States District Court
N. D. Illinois, E. D.
July 3, 1968.

See also D.C., 280 F.Supp. 968; D.C., 288 F.Supp. 183; D.C., 288 F.Supp. 189; D.C., 288 F.Supp. 194.

Robert Tucker, R. Eugene Pincham, Kermit Coleman, Jean F. Williams, Ellis E. Reid, Lawrence E. Kennon, Leonard Karlin, Norman E. Lapping, Irving Birnbaum, Leo E. Holt, Cevil C. Butler, Edward Thompson, Chicago, Ill., Dennis J. Roberts, Newark, N. J., William M. Kunstler and Arthur Kinoy, New York City, for plaintiff.

John J. Stamos, State's Atty. of Cook County, Ill., Edward J. Hladis, Chief of Civil Division, Ronald Butler, Dean Bilton, Asst. State's Attys., for defendant state officers.

Raymond F. Simon, Corp. Counsel of Chicago, Richard J. Elrod, Asst. Corp. Counsel, Kenneth W. Sain, Asst., Corp. Counsel, for defendant city officials.

## OPINION

WILL, District Judge.

This is an allegedly class action, brought by the plaintiffs pursuant to Rule 23(a) (1) (3) of the Federal Rules of Civil Procedure, seeking declaratory

and injunctive relief against certain officers of the City of Chicago and Cook County, Illinois. Some of the individual plaintiffs are negro citizens who currently face criminal prosecutions before the Circuit Court of Cook County, Illinois. These prosecutions arose out of a series of demonstrations taking place in Chicago, Illinois in 1967. One prosecution, however, dates back to an arrest in 1966. The other individual plaintiffs are negroes and allegedly sue as representatives of the class of all negroes in the City of Chicago. Plaintiff, ACT, is an unincorporated association which is active in fostering civil rights for negroes through various kinds of protest activities. The defendants are either municipal officers of the City of Chicago or officers of Cook County, Illinois.

Both the city and county defendants have moved to dismiss this action in its present posture, contending that federal forebearance to the competency of the courts of Illinois is appropriate under the doctrine of abstention and that the federal anti-injunction statute, 28 U.S.C. § 2283, bars federal equitable relief. These contentions are substantially similar to the arguments for dismissal advanced by the defendants on two previous occasions during the course of this litigation, but differ in substance and significance because of the present status of the case. It is necessary, therefore, to review the history of this case in order that these contentions may be placed in proper perspective.

Plaintiffs filed their complaint on October 27, 1967. Simultaneously, they moved that a three-judge court be convened to hear and determine the issues presented therein. The complaint alleges, essentially, that certain state statutes and ordinances of the City of Chicago were unconstitutionally broad, vague and indefinite regulations of speech and peaceful assembly[1] and that these statutes and ordinances were being applied in an unconstitutional manner for the purpose of discouraging the plaintiffs' civil rights activities. On the basis of these allegations, the plaintiffs sought a declaration of the unconstitutionality of these statutes and ordinances and/or the illegality of the application of these statutes and ordinances to their conduct. Plaintiffs also sought the issuance of injunctions restraining the defendants from enforcing these statutes and ordinances and from "impeding, intimidating, hindering, and preventing plaintiffs" from exercising their constitutional rights of speech and peaceful assembly.

Shortly after the filing of the complaint, the municipal and county defendants moved to dismiss on the grounds, *inter alia*, that the complaint failed to disclose a basis for equitable relief, that the doctrine of federal abstention was applicable, and that the federal anti-injunction statute barred the entry of an injunction against the defendants in regard to those criminal proceedings currently pending in the Illinois state courts. An opinion denying these motions was issued on December 28, 1967.[2] The complaint was found to raise several substantial constitutional issues and to allege a formal basis for equitable relief. It was further determined that plaintiffs' claims regarding the challenged state statutes presented questions solely within the competency of a three-judge court. The plaintiffs' claims regarding the challenged city ordinances, however,

1. The state statutes listed in the complaint were: Ill.Rev.Stat., Ch. 38, § 25–1 (Proscribing "Mob Violence"); Ill. Rev.Stat., Ch. 38, § 31–1 (Proscribing "Resisting or Obstructing a Peace Officer"); Ill.Rev.Stat., Ch. 38, § 12–2 (Proscribing "Aggravated Assault"); Ill. Rev.Stat., Ch. 38, § 12–4 (Proscribing "Aggravated Battery"); Ill.Rev.Stat., Ch. 38, § 12–6 (Proscribing "Intimidation").

The city ordinances listed in the complaint were: Municipal Code of Chicago, Ch. 11, § 33 (Proscribing "Obstructing or Resisting a Police Officer"); Municipal Code of Chicago, Ch. 193, § 1 (Proscribing "Disorderly Conduct").

2. Landry v. Daley, 280 F.Supp. 929 (N.D. Ill.1967).

were found to be inappropriate for determination by a three-judge court. Accordingly, these claims were severed from those involving the state statutes for consideration by a single-judge court.[3] At that time, the questions of abstention and the applicability of the anti-injunction statute were deemed premature.[4]

The claims regarding the state statutes were certified to a three-judge tribunal. A determination of the alleged unconstitutional application of the statutes was held in abeyance and on January 27, 1968, a hearing was held. At this hearing plaintiffs confined their challenge to the constitutionality of the Illinois "Mob Action,"[5] "Resisting or Obstructing a Peace Officer,"[6] and "Intimidation"[7] statutes. The challenges asserted in the complaint to the "Aggravated Assault"[8] and "Aggravated Battery"[9] statutes were abandoned. Although defendants confined their argument to the constitutionality of the challenged statutes, in their briefs they reasserted their contentions regarding the applicability of the abstention doctrine and the anti-injunction statute and the impropriety of federal equitable relief.

On March 4, 1968, the three-judge court filed its written opinion.[10] Following the principles announced by the Supreme Court in Dombrowski v. Pfister, 380 U.S. 479, 485–486, 489–492, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and Zwickler v. Koota, 389 U.S. 241, 249–252, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), abstention was deemed inappropriate and a ruling was issued on the constitutionality of the challenged statutes. Subsections (a) (2) of the "Mob Action"[11] and (a) (3) of the "Intimidation"[12]

statutes were found to be vague and overly broad. The remaining sub-sections of these statutes and the "Resisting or Obstructing a Peace Officer"[13] statute were found consistent with principles of procedural and substantive due process. A declaratory judgment was therefore issued declaring the indicated sub-sections of the "Mob Action" and "Intimidation" statutes unconstitutional, null and void under the due process clause of the Fourteenth Amendment to the Constitution of the United States. The remainder of each of these statutes and the "Resisting" statutes were declared valid. Although an injunction was not issued, the three-judge court retained jurisdiction to determine the other claims presented in the plaintiffs' complaint and "to render additional relief if necessary."[14]

The claims regarding the municipal ordinances, which had been reserved for single-judge determination, were likewise split. A determination of the alleged unconstitutional application of the ordinances was held in abeyance and a hearing was held at which only the validity of the two challenged city ordinances was argued. At this hearing, the municipal defendants raised the same questions concerning the applicability of the abstention doctrine and the anti-injunction statute that the county defendants raised in the three-judge hearing.

An opinion dealing with these issues was filed by this Court on the same day that the three-judge court's opinion was filed. Abstention was held to be inappropriate for the same reasons that were set forth in the three-judge opinion.[15] Accordingly, a ruling was made

---

3. Id. at 937–938.

4. Id. at 936, 938.

5. Ill.Rev.Stat., Ch. 38, § 25–1.

6. Ill.Rev.Stat., Ch. 38, § 31–1.

7. Ill.Rev.Stat., Ch. 38, § 12–6.

8. Ill.Rev.Stat., Ch. 38, § 12–2.

9. Ill.Rev.Stat., Ch. 38, § 12–4.

10. Landry v. Daley, 280 F.Supp. 938 (N.D. Ill.1968) (three-judge court).

11. Ill.Rev.Stat., Ch. 38, § 25–1.

12. Ill.Rev.Stat., Ch. 38, § 12–6.

13. Ill.Rev.Stat., Ch. 38, § 31–1.

14. The future enforcement of the unconstitutional sub-sections of the "Mob Action" and "Intimidation" statutes was subsequently enjoined on April 2, 1968.

15. Landry v. Daley, 280 F.Supp. 968 (N.D. Ill.1968).

on the constitutionality of the city ordinances. Portions of both the "Disorderly Conduct" and the "Obstructing or Resisting a Police Officer" ordinances were found to be vague and overly broad. Since the provisions of these ordinances were found to be inseparable, both ordinances were declared unconstitutional, null, and void in their entirety under the due process clause of the Fourteenth Amendment to the Constitution of the United States.

An injunction against the enforcement of these ordinances was not issued at the time of this declaration. The Court, however, retained jurisdiction, and on March 18, 1968, a prospective injunction was entered proscribing any future enforcement of the ordinances or the institution of any new prosecutions under them. At the same time, the Court announced that it would make *ad hoc* determinations in those pending cases brought to its attention as to whether or not there was sufficient cause for prosecution and that it would exercise its equitable powers only in those pending cases, including those involving the plaintiffs, in which the prosecution was predicated solely on activities protected by the First Amendment to the United States Constitution.[16]

On June 5, 1968, the three-judge court divested itself of jurisdiction over the claims raised in the complaint concerning the alleged unconstitutional application of certain state statutes and ordered the return of these claims to this court.[17] At this time, therefore, this Court has all the remaining claims of the plaintiffs, relating to enforcement of both the state statutes and the municipal ordinances.

Since the declaratory judgment by the three-judge court, the prosecutions originally brought against certain plaintiffs under sub-section (a) (2) of the "Mob Action" statute have been dismissed by the county officials. The prosecutions instituted against certain other plaintiffs under the "Resisting" statute and other sub-sections of the "Mob Action" statute, which were declared valid by the three-judge court, are still pending. Some of these prosecutions also involve charges of "Aggravated Assault" and "Aggravated Battery." Similarly, a number of the plaintiffs face prosecution by the municipal officials under the "Disorderly Conduct" and "Obstructing" ordinances, which were declared invalid by this Court. Plaintiffs' remaining contentions are directed towards these prosecutions.

Essentially, plaintiffs claim that the statutes and ordinances under which these prosecutions have been instituted have been applied in an unconstitutional manner for the purpose of discouraging the plaintiffs' civil rights activities. The complaint specifically alleges that the defendants have purposefully entered into a plan or scheme of concerted and joint action among themselves and with other persons unknown to the plaintiffs to deprive the plaintiffs of rights, privileges and immunities secured to them by the Constitution and laws of the United States.

Pursuant to this plan, the defendants have allegedly prosecuted and threatened to prosecute the plaintiffs and other members of the class they allegedly represent under the color and authority of these statutes and ordinances. It is alleged that certain plaintiffs and other members of the class were arrested without warrants or probable cause, that prosecutions based on these statutes and ordinances were then instituted against them, and that they have been held on unreasonable and exorbitant bail. The complaint asserts further that these arrests and prosecutions, as well as threats of future enforcement of the statutes and ordinances, have been made by the defendants without any expectation of securing valid convictions, but rather are part of a plan to employ arrest, detention on excessive bail and threats of prosecution to harass plaintiffs and

16. Landry v. Daley, 67 C 1863 (N.D.Ill., Mar. 18, 1968).

17. Landry v. Daley, 288 F.Supp. 194 (N.D. Ill., June 5, 1968 (three-judge court).

their supporters and to discourage them from asserting and exercising their civil rights.

It is this remaining portion of the case which both the county and municipal defendants seeks to have dismissed. The motion by the county defendants[18] urges the Court to abstain from deciding these claims as they relate to the propriety or impropriety of the application of the state criminal statutes in question. They point out that eight of the plaintiffs are charged with violations of statutory provisions which were either held valid by the three-judge court or were not challenged by the plaintiffs in the earlier proceedings and that these prosecutions were commenced prior to the filing of this action. The claims presently before this Court, they argue, are matters of legal defense and should be asserted in the state criminal proceedings. They assert that such a disposition is dictated by the principles of the doctrine of abstention and the anti-injunction statute, 28 U.S.C. § 2283.

Specifically, they contend that interdiction of state criminal proceedings by a federal district court is justified only under the most extraordinary circumstances. The cases of Dombrowski v. Pfister[19] and Zwickler v. Koota[20] which the three-judge court relied upon in its earlier rulings, it is argued, are factually distinguishable from the present posture of this case, in that they involved challenges to the constitutionality of state statutes themselves and not to the application of those statutes to pending cases. Neither *Dombrowski* nor *Zwickler*, defendants contend, authorize the interruption by a federal district court of a state proceeding involving a valid criminal statute. Rather, they assert, in both cases the Supreme Court recognized the continuing validity of the principle that the federal courts should forebear from the exercise of their federal jurisdiction in such circumstances. Moreover, they urge that the recent decision of Zwickler v. Boll[21] reaffirms this distinction and conclusion.

Similarly, the municipal defendants urge the Court to abstain from determining the propriety of the application of the "Disorderly Conduct" and "Obstructing or Resisting a Police Officer" ordinances to the plaintiffs' conduct. In support of this motion these defendants "adopt and incorporate by reference" the memorandum propounded by the county defendants in support of their motion.

 It should be noted, however, that the questions presented by the respective motions of the county and municipal defendants are not exactly the same. The prosecutions in which the county officials intend to proceed are based on valid statutory provisions, while those in which the municipal officials intend to proceed are based upon two city ordinances which have been declared unconstitutional. A prosecution based on such vague and overly broad provisions may itself be a violation of due process,[22] and a federal injunction would be proper under such circumstances according to the rationale of both the *Dombrowski*[23] and *Zwickler*[24] decisions. Nevertheless, since this Court has declined to issue a blanket injunction against all the pending prosecutions instituted under these ordinances, the present motions by the city

18. This motion was originally presented to the three-judge Court. Consequently, it was referred to this Court for disposition when the three-judge court dissolved itself. See Landry v. Daley, 288 F.Supp. 194 (N.D.Ill., June 5, 1968) (three-judge court).

19. 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

20. 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

21. 391 U.S. 353, 88 S.Ct. 1666, 20 L.Ed.2d 642 (1968), aff'g 270 F.Supp. 131 (W.D. Wisc. 1967).

22. See Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1942).

23. See 380 U.S. at 485–489, 490–492, 85 S.Ct. 1116.

24. See 389 U.S. at 254–255, 88 S.Ct. 391.

and county defendants will be treated as analogous.

### The Questions of Abstention and Equitable Relief

██ The essence of the issue posed by the defendants is the proper scope of federal intervention in state court proceedings. The defendants' position is that federal intervention is customarily limited to Supreme Court review after an ultimate disposition by the state courts. The premise on which this position rests is that the principle of federalism requires the avoidance, so far as possible, of direct and immediate interdiction of the autonomy of local law enforcement institutions.[25] Intervention, then, is permissible only if, as in the case of Supreme Court review, it follows state refusal to honor federal rights.

 It is true, as a general proposition, that the federal courts have, except in unusual circumstances, refused to entertain collateral attacks upon state criminal proceedings. This refusal, of course, has been based, in part, on considerations of federalism, i. e., deference to local autonomy. Nevertheless, there is no automatic or absolute rule of forebearance by federal courts whenever the autonomy of local law enforcement institutions might be affected directly and immediately. Our federal system presupposes the supremacy of federal constitutional guarantees and federally protected statutory rights. State refusal to honor these guarantees and rights can

also jeopardize the federal system. Inherent in any collateral proceeding, such as the instant suit, in which a federal court is called upon to render judgment on the action taken by a state in enforcing its laws, therefore, are conflicting considerations of federal supremacy and local autonomy.

Initially, it must be recognized that the propriety of such a collateral proceeding involves two different questions: 1) whether traditional limitations on federal equitable relief are applicable, and 2) whether abstention is appropriate.[26] Although these questions may overlap in any particular suit, they are not synonymous. Both the traditional limitation doctrine and the abstention doctrine can roughly be said to embody principles of judicial federalism and to dictate federal deference to the competency of state tribunals, but the tests which determine their applicability are not identical. Each is an outgrowth of a separate line of cases.

██ Traditionally, the equitable power of a federal court may properly be invoked only where there is an absence of a plain and adequate remedy at law and the plaintiff would otherwise be subject to imminent, irreparable injury.[27] Where a federal court has been called upon to enjoin a state criminal proceedings, this equitable power has been further qualified by considerations of federalism. Historically, these considerations may be traced back to the case of In re Sawyer, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed. 402 (1888), in which

---

25. This idea is actually a corollary of the separate function theory of the nature of federalism—the theory that the federal government is responsible for certain "national functions," while state governments are charged with "local responsibilities," in particular preserving order through tort and criminal law. This theory is incorrect as an absolute proposition, although it has validity as a general principle. The Fourteenth Amendment and the principle of concurrent state and federal jurisdiction preclude a strict separation of functions. See, generally, Note 75 Yale L.J. 1007 (1966).

26. See Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

27. See, generally, Moore, Federal Practice ¶0.229 [2] [3] (3d ed. 1965). The requirements that the plaintiff be without an adequate legal remedy and subject to irreparable injury have frequently been viewed as jurisdictional. Semantically, this view would seem incorrect. These requirements are more properly viewed as limitations upon the exercise of equitable powers by a court rather than its jurisdiction to hear and decide a dispute. See Zwickler v. Koota, 389 U.S. 241, 254–255, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

the Supreme Court held that a federal court does not have the jurisdiction or power to try and determine issues involved in a state proceeding, whether criminal, civil, or administrative in nature, or to enjoin state officers and tribunals from holding such a proceeding. Id. at 221–222, 8 S.Ct. 482. This holding was modified, if not completely rejected, 20 years later. In the landmark case of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court recognized that federal courts would be justified in exercising their power to enjoin state proceedings where state officials "threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution." Id. at 156, 28 S.Ct. at 452.

Broad application of the principle announced in Ex parte Young, of course, would have permitted federal interdiction of state proceedings and a federal determination of the constitutionality of any questionable state statute at the insistence of anyone threatened by its application. In subsequent decisions, however, the Supreme Court required or sanctioned forebearance from federal interference with state court proceedings.[28] Mingling considerations of federalism with traditional notions of equity, the Court adopted a rigorous application of the general limitations upon equitable relief. The normal adjudication of constitutional defenses was held to afford parties an adequate remedy at law. Similarly, the mere possibility of an erroneous initial application of constitutional standards was considered not to amount to irreparable injury necessary to justify a disruption of state proceedings.

Perhaps the most dramatic example of the impact of these principles is found in Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), which involved a collateral suit in a Pennsylvania federal district court, attacking the application of a city ordinance to religious solicitations. After a trial, the district court held the ordinance invalid and enjoined the defendants (city officials) from enforcing the statute against the plaintiffs. On appeal, the Court of Appeals for the Third Circuit sustained the jurisdiction of the district court, but reversed on the merits.[29] The Supreme Court subsequently granted certiorari and set the case for argument with Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), which involved the review of a criminal conviction for religious solicitation under the same ordinance.

In *Douglas*, the Court summarized the applicable principles, stating,

Notwithstanding the authority of the district court, as a federal court, to hear and dispose of the case, petitioners are entitled to the relief prayed only if they establish a cause of action in equity. Want of equity jurisdiction, while not going to the power of the court to decide the cause * * * may nevertheless, in the discretion of the court, be objected to on its own motion. * * * Especially should it do so where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.

[C]ourts of equity in the exercise of their discretionary powers should

28. See, e. g., Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1962); Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1960), affirming 277 F.2d 739 (2nd Cir. 1960); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1942); Beal v. Missouri Pacific R. R. Corp., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); Spiel-man Motor Sales Co., Inc. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935). See, also, Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961); Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951).

29. 130 F.2d 652 (3rd Cir. 1942).

conform to this policy [of leaving generally to the state courts the trial of criminal cases arising under state laws] by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds. * * *

It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. * * * Where the threatened prosecution is by state officials for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury "both great and immediate." * * * 319 U.S. at 162–164, 63 S.Ct. at 881.

The Court concluded that there was "the want of equity in the cause," [30] stating,

It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued to this Court. 319 U.S. at 164, 63 S.Ct. at 881.

On the basis of this conclusion, it affirmed the decision of the Court of Appeals, even though it had held in Murdock v. Commonwealth of Pennsylvania[31] that such an application of the ordinance was unconstitutional.

In *Douglas* and similar decisions, therefore, the Supreme Court recognized a broad policy of forbearance from federal interference with state criminal proceedings. Principles of federalism or comity were considered to qualify the traditional basis for equitable relief. The applicability of these qualifications generally precluded a collateral suit in a federal court seeking injunctive relief against a threatened or actual state criminal prosecution, except in the most extraordinary circumstances.

■ A similar obstacle to a collateral suit in the federal courts is the applicability of the abstention doctrine. This doctrine, like the traditional limitations on federal equitable relief, is also an expression of the reluctance of the federal courts to intervene in state proceedings. In its broadest sense, abstention is a judicially-fashioned doctrine which allows a federal court to stay or dismiss its proceedings until an issue of state law is authoritatively determined by a state court.[32]

Abstention was first recognized in the case of Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643,

30. 319 U.S. at 166, 63 S.Ct. at 882.

31. 319 U.S. at 117, 63 S.Ct. 870 (1943).

32. In this sense, abstention represents a kind of judicial carve-out from the congressional grant of federal jurisdiction.

See, generally, 1 Barron & Holtzoff, Federal Practice and Procedure § 64 (Wright ed. 1964); Note, 69 Yale L.J. 643 (1960); Note, 73 Harv.L.Rev. 1358 (1960); Comment, 1961 Wis.L.Rev. 450 (1961). While the cases in which this technique

85 L.Ed. 971 (1941). In this case, certain railroad companies sought to enjoin the enforcement of an order of the Texas Railroad Commission on the grounds that the order violated the Fourteenth Amendment and was unauthorized under Texas law. A three-judge district court did not reach the constitutional issue; instead, it granted injunctive relief on the ground that the Commission's order was outside the scope of its authority under Texas law.[33] On direct appeal, the Supreme Court reversed, holding that the district court should retain jurisdiction, but stay the proceedings pending an action in the state courts to secure an authoritative determination of the Commission's statutory power.[34] This determination was not compelled by constitutional principles.[35] Instead, it was motivated by considerations of efficient judicial administration. The opinion in *Pullman* suggests two reasons for abstention. The first reason is the policy of avoiding unnecessary constitutional adjudication. The Court concluded that resolution of the constitutional question might not be necessary because it could be displaced by a state ruling which would obviate the constitutional

problem.[36] The second is the policy of avoiding "tentative" decisions involving unclear issues of state law. Such decisions, the Court concluded, might interfere with the "harmonious relation between state and federal authority."[37]

In subsequent decisions, situations similar to *Pullman* were recognized by the Court to present clear cases for abstention.[38] Since the *Pullman* doctrine requires the retention of jurisdiction by the federal court,[39] this principle was not considered to "involve the abdication of federal jurisdiction but only the postponement of its exercise."[40] Nevertheless, the underlying policies of this doctrine were considered to be interdependent by the Court. Abstention was held to be appropriate only in cases where a federal court could avoid resolving unclear questions of state law and a determination of these issues by a state court might dispose of the constitutional question. Where the state law was settled or was not fairly subject to an interpretation which would render unnecessary or substantially modify the federal question, abstention was deemed improper.[41] In such situations, the Supreme Court

has been recognized are usually referred to as establishing the "abstention doctrines," it is probably more precise to refer to "abstention doctrines" because there are several distinguishable lines of cases, involving different factual situations, different procedural consequences, and different underlying rationale. Wright, Federal Courts 169 (1963).

33. 33 F.Supp. 675 (W.D.Tex.1940).

34. 312 U.S. at 501–502, 61 S.Ct. 643.

35. Indeed, it is well settled that a federal court has jurisdiction to decide ancillary state issues in such a case.
See Hurn v. Oursler, 289 U.S. 238, 53 S. Ct. 586, 77 L.Ed. 1148 (1933); Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909).

36. 312 U.S. at 500, 61 S.Ct. 643.

37. Id. at 501, 61 S.Ct. at 645.

38. See, Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L. Ed.2d 267 (1957); Spector Motors Serv. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). See, gener-

ally, cases cited in Barron & Holtzoff, op. cit. supra note 32, § 64 n. 51.

39. It has been specifically held that dismissal is improper in a Pullman-type case. Doud v. Hodge, 350 U.S. 485, 487, 76 S.Ct. 491, 100 L.Ed. 577 (1956).

40. Harrison v. N.A.A.C.P., 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959). See, also, Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 29, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

41. E.g., Zwickler v. Koota, 389 U.S. 241, 249–251, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Harman v. Forssenius, 380 U.S. 528, 534–535, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Davis v. Mann, 377 U.S. 678, 690–691, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); McNeese v. Board of Education, 373 U.S. 668, 673, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); City of Chicago v. Atchison, T. & S. F. R.R. Co., 357 U.S. 77, 84, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958).

held that the federal courts have a duty to decide the merits of the action.[42]

Abstention is not limited to cases, such as *Pullman,* where a premature constitutional decision may be avoided. A second principle dictates that a federal court should refrain from exercising its jurisdiction where it might entail needless conflict with the administration by a state of its own affairs. This doctrine is generally considered to have been established in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

The *Burford* case involved an attack upon the validity of a proration order of the Texas Railroad Commission granting Burford a permit to drill four oil wells. Federal jurisdiction was invoked on the basis of diversity of citizenship and because the action involved a federal question. The district court in which the action was instituted refused to enjoin the Commission's order and dismissed the action on the ground that the complaint presented a matter which was within the competency of the state courts.[43] The Court of Appeals for the Fifth Circuit reversed this decision and ordered an injunction.[44] On certiorari, the Supreme Court re-

versed the decision of the Court of Appeals and reinstated the judgment of the district court.[45] Since federal jurisdiction had been properly invoked, the only question presented to the Court was whether or not jurisdiction should be exercised under the circumstances. Concluding that it should not, the Court's opinion stressed that the Commission's order was part of a general regulatory scheme of the state and that this system contemplated "expeditious and adequate" review of the Commission's orders by the state courts. The opinion further noted that questions involving the regulation of gas and oil were basic problems concerning Texas policy and, therefore, should be considered by a state court.[46]

The *Burford* decision, therefore, stands for the proposition that a federal court should abstain if a decision by the federal court would seriously interfere with a complex state regulatory scheme. In subsequent cases, its rationale was expanded to dictate abstention whenever federal deference would avoid needless obstruction of the administration by the state of its own domestic policies.[47] Under this doctrine, dismissal of the action rather

42. See, e.g., Zwickler v. Koota, supra at 254, 88 S.Ct. 391; Harman v. Forssenius, supra at 534–535, 85 S.Ct. 1177; Baggett v. Bullitt, supra at 375–379, 84 S.Ct. 1316; McNeese v. Board of Education, supra at 373 U.S. at 673–674, 83 S.Ct. at 1436–1437.

43. See 124 F.2d 467, 468 (5th Cir.), rev'd on rehearing, 130 F.2d 10 (5th Cir. 1942).

44. 130 F.2d 10 (5th Cir. 1942).

45. 319 U.S. 315, 334, 63 S.Ct. 1098 (1943).

46. Id. at 318, 324–327, 332, 63 S.Ct. 1098.

47. See Barron & Holtzoff, op. cit. supra note 2, § 64 at 344.
The first major departure from a narrow application of the *Burford* rationale was in the case of Alabama Public Service Comm'n v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). The plaintiff railroad had been denied permission to discontinue certain interstate passenger service by the Commission. It instituted an action in a federal district court praying for injunc-

tive relief. After a *de novo* hearing, the three-judge district court declared the Commission's order void and entered an injunction. On direct appeal, the Supreme Court reversed this decision and ordered the complaint dismissed.
The majority opinion expressly recognized that the policies which gave rise to the Pullman doctrine were not applicable. Although it noted that "interstate rail service is 'primarily the concern of the state,'" the opinion did not dwell on this point. Id. at 345–346, 71 S.Ct. 762. (Indeed, it was clear that the Court was not faced with a unified regulatory scheme over a complex industry as in *Burford*.) Instead, the Court concluded that "adequate state court review of an administrative order * * * is available to appellee." Recognizing a broad policy of federal deference to state domestic policy, it held that federal interference was therefore unnecessary. Id. at 349–351, 71 S.Ct. at 768. See, generally, Moore, Federal Practice ¶ 0.203[1] at 2103–09 (3d ed. 1965).

than retention or jurisdiction pending a state determination is normally appropriate. While it might be considered that this constitutes an abdication of judicial duty, this proposition has evidently not troubled the courts. It is generally assumed that any prejudice to the federal rights of the parties can be redressed by ultimate review of the state decision in the United States Supreme Court.[48]

■ Both the *Pullman* and *Burford* doctrines [49] are relevant to an inquiry such as the present one. A typical application of the *Burford* rationale is found in those cases which hold that a federal court should not interfere by injunction with a state's enforcement of its criminal law.[50] Similarly, the *Pullman* rationale has been held to be applicable even where the plaintiff is claiming a denial of his civil rights.[51] Nevertheless, the Supreme Court has held that where a plaintiff asserts a claim under the Civil Rights Act, he need not exhaust

state administrative remedies before bringing his action in a federal court.[52] Cases which involve individual or personal liberties, then, would seem to present an exception to the *Burford* doctrine, at least in situations which do not involve a possible interdiction of pending state criminal proceedings.

### The Special Circumstances Exceptions: Dombrowski v. Pfister

■ The general policy of federal deference to state tribunals which the Supreme Court recognized in *Douglas* and similar decisions was based on the underlying assumptions that state courts and prosecutors would observe constitutional limitations [53] and that the normal adjudication of constitutional defences in the course of a state criminal prosecution could assure adequate vindication of constitutional rights.[54] Implicit in these decisions was the logical inference that the qualifications on equitable re-

48. Barron & Holtzoff, op. cit. supra note 2, § 64 at 346; Marshall, Federalism and Civil Rights 50–51 (1964).

49. Beyond these doctrines, principles of abstention are still unsettled. In certain situations, abstention may be appropriate in a pure diversity suit solely on the basis of an unclear issue of state law. See Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1960). See, generally, Note, 52 Iowa L.Rev. 686 (1967); Note, 73 Yale L.J. 850 (1964). However, the Supreme Court has yet to expressly recognize such a doctrine. See Meredith v. City of Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

50. Barron & Holtzoff, op. cit. supra note 2, § 64 at 344–45.
See Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Beal v. Missouri Pac. R.R. Corp., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941). Cf. Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963).

51. See Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). See, generally, authorities cited in Barron & Holtzoff, op. cit. supra note 32, § 64 n. 51.

52. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622

(1963). In reaching this conclusion, the majority opinion states,
We would defeat those purposes [of the Civil Rights Act] if we held that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court. Id. at 672, 83 S.Ct. at 1436.
This opinion distinguishes the case from *Pullman* on the ground that no underlying issue of state law was involved. It further observes that a sufficiently adequate administrative remedy was not available. Id. at 674–676, 83 S.Ct. 1433.
It should be noted further that a number of lower federal courts have been reluctant to order abstention in civil rights cases. See, e.g., Morrison v. Davis, 252 F.2d 102 (5th Cir.), cert. denied, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1075 (1958) (Pullman doctrine); Wright v. McMann, 387 F.2d 519, 525 (2d Cir. 1967) (Burford doctrine); Stapleton v. Mitchell, 60 F.Supp. 51, 55 (D.C.Kan.), dismissed per stipulation, 326 U.S. 690, 66 S.Ct. 172, 90 L.Ed. 406 (1945) (Pullman doctrine).

53. Dombrowski v. Pfister, 380 U.S. 479, 484, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

54. See Dombrowski v. Pfister, 380 U.S. 479, 485–486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

lief were inapplicable where special circumstances suggested that these assumptions were unjustified. Similarly, the abstention doctrine, particularly the *Burford* principle, rested on the assumptions that the state courts were as competent to preserve the constitutional rights of litigants as the federal courts and that Supreme Court review would afford adequate protection of constitutional rights.[55] Implicitly, therefore, the appropriateness of abstention is also dependent on whether an "adequate remedy" is available in the state courts.[56]

In Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the Court expressly recognized these exceptions to the "equitable limitations" and abstention doctrines. *Dombrowski* involved a civil action, instituted by a civil rights organization and certain individual plaintiffs, seeking declaratory and injunctive relief from the threatened enforcement of two allegedly unconstitutional Louisiana anti-subversion statutes. The plaintiffs asserted two distinct grounds for federal relief. They alleged first, that the defendants had invoked, and threatened to continue to invoke, certain statutes in bad faith solely to harass plaintiffs and to discourage their civil rights activities[57] and, second, that these statutes were unconstitutionally vague and overly broad regulations of freedom of expression.

Shortly after a three-judge district court was convened, a state grand jury was summoned in New Orleans to hear charges against the plaintiffs. An interlocutory injunction was then ordered by the district court forbidding prosecution until a decision of the case. Follow-

55. Bailey, Enjoining State Criminal Prosecutions Which Abridge First Amendment Freedoms, 3 Harv.Civ.Rights-Civ.Lib.L. Rev. 67, 75–82 (1967),

 Commentators have criticized the application of the abstention doctrine in civil liberties cases for a variety of reasons. One criticism is that the general assumption that constitutional rights can be vindicated ultimately by Supreme Court review overlooks the fact that a state defendant may have a *legally cognizable* right not to be prosecuted at all for engaging in constitutionally protected activities. Bailey, supra at 77. A second criticism is that abstention is misleading in its emphasis on forebearance from direct federal interference with local autonomy. Our federal system is designed to check local abuse to essential federal rights. See *Note*, 75 Yale L.J. 1007 (1966). The issue, therefore, is not federal interference, but the responsiveness of state authorities to these rights. See Brewer, Dombrowski v. Pfister: Federal Injunctions Against State Prosecutions in Civil Rights Cases—A New Trend in Federal-State Relations, 34 Fordham L.Rev. 71, 90–91 (1965). A third is that the assumption that abstention avoids needless friction with state policies is illusory. In some situations, it may actually increase friction. See *Note*, 80 Harv.L.Rev. 604, 622 (1967). A final criticism is that the Civil Rights Act embodies a historic judgment by Congress that this area is of the highest national concern and abstention, there-

fore, at odds with this policy, in that it introduces the risk of nullification by state process. See Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 L. & Contemp.Prob. 216, 230 (1948).

56. See McNeese v. Board of Education, 373 U.S. 668, 674–676, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Alabama Public Service Comm'n v. Southern Ry. Co., 341 U.S. 341, 349, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). Cf. Moore, op. cit. supra note 47, ¶ 0.203[1] at 2109.

57. Attached to the complaint were affidavits and an offer of proof. See Dombrowski v. Pfister, 227 F.Supp. 556, 573–574 (E.D.La.1964) (dissenting opinion).

 These disclosed essentially the following facts. Early in October 1963, plaintiff Dombrowski and others were arrested. Their offices were raided and their files and records seized. A state judge later quashed the arrest warrants and discharged the plaintiffs. Subsequently, the court granted a motion to suppress the seized evidence on the ground that the raid was illegal. Louisiana officials continued, however, to threaten the plaintiffs with prosecution under the anti-subversion statutes and to withhold their files and records. These officials also repeatedly issued statements condemning the plaintiffs' civil rights organization as a subversive organization. See Dombrowski v. Pfister, 380 U.S. 479, 487–489, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

ing separate hearings on the questions of the constitutionality of the statutes and whether or not evidence should be heard on the enforcement of the statutes, the district court vacated the injunction and dismissed the complaint. In its written opinion, it held that the complaint failed to state a claim for equitable relief since no extraordinary harm had been shown and it refused to decide the constitutionality of the statutes.[58] Soon after the district court vacated the injunction, the state grand jury indicted the individual plaintiffs under certain provisions of one of the anti-subversion statutes.

On direct appeal, the Supreme Court reversed the decision of the district court, holding, first, that the complaint alleged sufficient irreparable injury to justify equitable relief [59] and, second, that abstention was improper.[60] As if to emphasize the point, without further consideration or proof being necessary, the Court rendered a decision upon the constitutionality of the statutory provisions on which the plaintiffs had been indicted after the district court's decision. It held these provisions invalid.[61] The remainder of the case, it remanded to the district court for further action consistent with its opinion.

■■■ In discussing the question of equitable relief raised in *Dombrowski,* the majority opinion seems to indicate that either bad faith enforcement or an attack upon the constitutionality of a statute regulating freedom of expression, if proven, justifies federal equitable relief. While recognizing the validity of the policy of federal forebearance,[62] the opinion carefully distinguishes Douglas

v. City of Jeannette,[63] as a case where "it was not alleged that Pennsylvania courts and prosecutors would fail to respect the Murdock ruling." [64] Other decisions are similarly distinguished as cases in which there were "no special circumstances to warrant cutting short the normal adjudication of constituional defenses in the course of a criminal prosecution.[65] In contrast, it states

[t]he allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a substantial loss or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury. 380 U.S. at 485–486, 85 S.Ct. at 1120.

All this suggests that federal interdiction of a state court proceeding is not inconsistent with the general policy of forebearance where "special circumstances" exist—where either the assumption that state courts and prosecutors will observe constitutional limitations or the assumption that defense in a criminal prosecution will assure adequate vindication of constitutional rights is unwarranted.[66]

In the portion of its opinion devoted to the question of abstention, the majority concluded that abstention was inappropriate on either the claim that the statutes in question were unconstitutionally vague and overly broad regulations of expression or the claim that these statutes were being applied in bad

58. Dombrowski v. Pfister, 227 F.Supp. 556 (E.D.La.1964).

59. 380 U.S. at 489, 85 S.Ct. 1116.

60. Id. at 489–490, 85 S.Ct. 1116.

61. Id. at 492–496, 85 S.Ct. 1116.

62. Id. at 483–485, 85 S.Ct. 1116.

63. See text supra at 208–210 and accompanying footnotes.

64. 380 U.S. at 485, 85 S.Ct. at 1120.

65. Id. at 485 n. 3, 85 S.Ct. at 1120 and accompanying text.

66. Compare Douglas v. City of Jeannette, 319 U.S. 157, 164–165, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), with Dombrowski v. Pfister, 380 U.S. 479, 485–487, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). See Brewer, Dombrowski v. Pfister: Federal Injunctions Against State Prosecutions in Civil Rights Cases—A New Trend in Federal-State Relations, 34 Fordham L.Rev. 71, 83–86 (1965).

faith.[67] Its reasoning, essentially, was that in either situation mere defense in a criminal prosecution could not assure adequate vindication of constitutional rights.[68]

■ Briefly summarizing, then, both the qualifications placed on the traditional bases for federal equitable relief and the abstention doctrine normally require that a federal court refrain from intervention in state court proceedings. The *Dombrowski* decision, however, recognizes that under special circumstances, where it appears that the state proceedings will not assure adequate vindication of constitutional rights, federal interdiction is justified. This exception is not inconsistent with general principles of equity and abstention. These principles rest on the underlying assumptions that the state courts are competent to decide the federal rights of the litigants and that an erroneous initial application of constitutional standards can be corrected adequately upon Supreme Court review. According to *Dombrowski*, these assumptions are simply not justified where a statute regulating expression is alleged to be either (1) unconstitutionally vague or overly broad, or (2) the basis of a threatened bad faith application. In such situations, abstention is improper because ultimate vindication of First Amendment rights on appeal to the United States Supreme Court from the highest state tribunal may come so late as to be meaningless. Accordingly, in such cases a federal court must grant an immediate hearing in which the merits of such claims may be considered. If the plaintiff should prevail, federal equitable relief is apparently warranted.

The Scope of the Special Circumstances Exceptions: Dombrowski v. Pfister and Cameron v. Johnson

The defendants in the instant action contend, however, that the scope of *Dombrowski* is much more limited. They argue, that federal injunctive relief is warranted only where a state statute is challenged and found to be unconstitutional on its face; this is the only exception to the general policy of federal forebearance which the Supreme Court recognized in *Dombrowski*.

In regard to this contention, the following language from the majority opinion is indeed relevant:

> We hold that abstention doctrine is inappropriate for cases such as the present one where, unlike Douglas v. City of Jeannette, statutes are justifiably attacked on their face as abridging free expression, *or as applied for the purpose of discouraging protected activities*. 380 U.S. 489–490, 85 S.Ct. 1122 (emphasis supplied)

The use of the disjunctive phrase in this language clearly indicates that two exceptions were expressly recognized by the Court.[69]

Moreover, this language is consistent with the Court's own treatment of the case and the mandate it passed to the district court. As noted above, after the district court vacated its interlocutory injunction, a state grand jury returned indictments against the individual plaintiffs under certain provisions of one of the challenged statutes. Thus, when the case reached the Supreme Court, it was presented with pending indictments under specific statutory provisions. It disposed of these statutory provisions on the merits, declaring them invalid even though they had not been passed upon by the district court. In addition, a brief filed in the Supreme Court by one of the appellees conceded certain facts concerning the plaintiffs' arrest, their discharge by a local judge, and their indictment by the state grand jury.[70] The Court directed the district court on remand to fashion an injunction restraining the prosecution of the pending indictment against the plaintiffs, ordering return of all papers and documents.

---

67. 380 U.S. 489–490, 85 S.Ct. 1116.

68. Id. at 485, 490–491, 85 S.Ct. 1116.

69. See, also, 380 U.S. at 490–491, 85 S.Ct. 1116.

70. See note 57 supra.

seized, and prohibiting further acts enforcing the sections of the statute found unconstitutional.[71]

The complaint, however, not only challenged the constitutionality of the statutory provisions on which the indictments were founded, but also other sections of that statute and the provisions of the second anti-subversion statute. Further, it alleged that the defendants threatened to enforce both statutes solely to discourage plaintiffs from their civil rights activities. Accordingly, the Supreme Court also directed the district court, on remand, to make an "expeditious determination, without abstention" of these remaining issues.[72]

Furthermore, defendants' contention here completely ignores the underlying rationale of the decision. *Dombrowski* rests on the unstated premise that full exercise of First Amendment freedoms should not be substantially impaired, but rather actively encouraged, in a democratic society such as our own. These freedoms, of course, are not absolute, and in a variety of situations the Supreme Court has recognized that the state has a substantial interest in regulating expression. But even though the state has a substantial interest, it may regulate expression "only with narrow specificity."[73] Imprecise regulation is likely to "substantially impair" the legitimate exercise of these rights because it engenders a deterrent or "chilling" effect which is beyond that necessary to fulfill the state's interest.

The majority in *Dombrowski* specifically recognized that this chilling effect is incidental to threatened or actual prosecution in two situations: (1) where brought under an unconstitutionally vague or overly broad statute, or (2) where instituted in bad faith. It further recognized that defense in a state prosecution could not adequately dispel this chilling effect.

The public must guess at the' conduct which falls within the ambit of a vague statute. Moreover, in the absence of clarity and precision, its enforcement is largely a matter of unlimited discretion. To the extent that a statute is overly broad it may proscribe legitimate or even protected conduct. Under such circumstances, it is safer to refrain from speech and assembly than to risk a period in jail.[74] Defense in a state criminal prosecution is not sufficient to remove this "chill" because it leads to piecemeal construction which resolves only the doubts of the defendant with no likelihood of obviating similar uncertainty for others. The opportunity to appropriately express one's views, however, is often-times fleeting. Those affected or potentially affected by such a statute, therefore, are entitled to be free from the burden of resolving uncertainty through state prosecution.[75]

71. 380 U.S. at 497–498, 85 S.Ct. 1116.

72. Id. at 498, 85 S.Ct. 1127.

73. N.A.A.C.P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). See, e.g., Keyishian v. Board of Regents, 385 U.S. 589, 603–604, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Ashton v. Kentucky, 384 U.S. 195, 200–201, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966); Cox v. State of Louisiana, 379 U.S. 536, 551–552, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Edwards v. South Carolina, 372 U.S. 229, 237–238, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). See, generally, Amsterdam, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. of P.L.Rev. 67 (1960).

74. See Dombrowski v. Pfister, 380 U.S. 479, 486–489, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1967).

See, also, N.A.A.C.P. v. Button, 371 U.S. 415, 432–433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Winters v. People of State of New York, 333 U.S. 507, 519–520, 68 S.Ct. 665, 92 L.Ed. 840 (1948); Thornhill v. State of Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Herndon v. Lowry, 301 U.S. 242, 261–262, 57 S.Ct. 732, 81 L.Ed. 1066 (1937).

75. See 380 U.S. at 490–491, 85 S.Ct. 1116. This is an extension of the rule of Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), which relaxes the normal rules of standing and permits defendants in criminal cases to attack vague or overly broad statutes on their face, without demonstrating that their own conduct could not constitutionally have been proscribed by a different

A similar "chill" on expression may result from bad faith prosecution for the purpose of harassment or discouraging protected activities.[76] Frivolous prosecutions of those engaging in unpopular causes serve notice on the community that the exercise of these rights may be an expensive proposition.[77] Defense in a state criminal prosecution is not sufficient to correct this evil. When the very prosecution is part of an unconstitutional scheme, the scheme, including future use of the statute, is quite irrelevant to the prosecution in the state courts.[78] The ultimate success of the defendant does not alter the impropriety of the unconstitutional scheme. The adjudication simply resolves the applicability or inapplicability of the statute to the defendant; it does not purge the scheme of its continuing impact upon federally protected rights.[79]

Thus, in either situation, *Dombrowski* suggests that a federal district court should exercise its jurisdiction, and if the allegations are proven, federal equitable relief is justified. This view of the scope of *Dombrowski* is consistent with the Supreme Court's subsequent decisions in Cameron v. Johnson.[80]

The *Cameron* case has a particularly interesting history which involves two separate journeys to the Supreme Court. The plaintiffs had been arrested for violating a Mississippi anti-picketing statute. Subsequently, they instituted a collateral suit in a federal district court, seeking injunctive relief from the enforcement of this statute. One of the grounds urged was that the statute was being applied for the purpose of discouraging their civil rights and voter registration activities. The other was that the statute was an unconstitutionally broad regulation of expression. A three-judge district court considered the case on affidavits, photographs, and briefs of the parties. After considering this evidence, the court refused to issue an injunction and dismissed the complaint.[81] Relying upon traditional principles of equity, the court concluded that the complaint failed to allege sufficient irreparable injury and that there was no necessity to pass upon the constitutionality of the statute.[82] It further found that the prosecutions instituted against the plaintiffs were brought in good faith.[83]

On direct appeal, the Supreme Court issued a brief *per curiam* opinion reversing the decision and remanding the cause to the district court for reconsideration in the light of *Dombrowski*.[84] Four members of the Court dissented from this disposition of the matter in two separate opinions, saying, essentially, that *Dombrowski* was not controlling because it was clear that the challenged statute was constitutional on its face and the district court had specifically found that prosecutions had been instituted in good faith. Both dissenting opinions recognized that *Dombrowski* dictated equitable relief whenever a vagueness attack was sustained or bad faith prosecution was proven.[85]

On remand, after a full evidentiary hearing, the district court again concluded that equitable relief was unjustified,

---

and more precise enactment. Id. at 97–98, 60 S.Ct. 736.
There is an exception to the *Dombrowski* proscription. Where a readily apparent construction suggests itself as a vehicle for rehabilitating the statute in a single prosecution, the federal court need not exercise its jurisdiction. 380 U.S. at 491, 85 S.Ct. 1116.

76. 380 U.S. at 486–489, 490, 85 S.Ct. 1116.

77. Bailey, supra note 55 at 87.

78. Cameron v. Johnson, 381 U.S. 741, 755, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1967) (dissenting opinion).

79. See 380 U.S. at 490, 85 S.Ct. 1116.

80. 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed. 2d 182 (1968).

81. 244 F.Supp. 846, 856 (S.D.Miss.1964).

82. Id. at 848, 851–855.

83. Id. at 848–849.

84. 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed. 2d 715 (1965).

85. Id. at 748–749, 85 S.Ct. 1751 (Justice Black, joined by Justices Harlan and Stewart); id. at 755–756, 85 S.Ct. 1751 (Justice White).

holding *Dombrowski* inapplicable.[86] Its opinion specifically recognizes that "*Dombrowski* sets forth two separate and distinct categories of circumstances in which the exercise of federal equity power to restrain state criminal prosecutions is appropriate."[87] In regard to these categories, the Court found, first, that the challenged statute was constitutional,[88] and, second, that "there was no harassment, intimidation, or oppression of these complainants in their efforts to exercise their constitutional right, but they were arrested and they are being prosecuted in good faith * * *."[89]

The case was then appealed to the Supreme Court a second time. On this occasion it affirmed, accepting the district court's findings on both the constitutionality of the statute and the absence of bad faith enforcement of it.[90] In regard to this later contention, the majority opinion states,

> Any chilling effect on the picketing as a form of protest and expression that flows from good-faith enforcement of this valid statute would not of course, constitute that enforcement an impermissible invasion of protected freedoms. * * * Appellants' case that there are "special circumstances" establishing irreparable injury sufficient to justify federal intervention must therefore come down to the proposition that the statute was enforced against them, not because the Mississippi officials in good faith regarded the picketing to violate the statute, but in bad faith to harass appellants' exercise of protected expression with no intention of pressing the charges or with any expectation of obtaining convictions, but knowing that appellants' conduct did not violate the statute. We agree with the District Court that the record does not establish the bad faith charged. 390 U.S. at 619, 620, 88 S.Ct. at 1340.

In light of the prior history of the case, this statement can not be interpreted as anything less than a clear acknowledgment that federal intervention would be justified under circumstances in which it is shown that enforcement of a statute is carried out in bad faith to harass an individual's exercise of protected freedoms.

Indeed, it would not have been necessary or appropriate for the Court to review the district court's findings of the absence of bad faith, if, as defendants here suggest, the principles announced in *Dombrowski* were limited only to circumstances in which a vague or overly broad statute is applied to expression. In the first portion of its opinion, the Court affirmed the validity of the Mississippi statute. Its disposition of the question of bad-faith enforcement in the second portion of the opinion, then, would have been merely an quixotic exercise, if that issue was irrelevant to the propriety of federal injunctive relief. *Cameron,* therefore, was simply a case in which neither of the grounds for federal intervention spelled out in *Dombrowski* was present.

Nevertheless, *Cameron* is significant because of the standards which it implicitly indicates that federal courts should adhere to in this area. The initial decision of the district court in *Cameron* was reversed because the court had evidently failed fully to adjudicate the issues. On remand, the district court held a full evidentiary hearing and it ruled on both the constitutionality of the statute and the allegations of bad faith enforcement. In conjunction with this second ground, the district court stated in its opinion that it did not determine the guilt or innocence of the plaintiffs, but only "whether there [was] substantial cause in law and fact supporting" their prosecution.[91] When the Supreme Court reviewed the district court's finding on this ground, it examined the evidence as to two factors: (1) selective enforcement

---

86. 262 F.Supp. 873, 879 (S.D.Miss.1966).

87. Id. at 878.

88. Id. at 878–879.

89. Id. at 876.

90. 390 U.S. 611, 615, 619, 88 S.Ct. 1335, 1337, 1339–1340 (1968).

91. 262 F.Supp. at 876.

of the statute, and (2) the absence of probable cause for the arrests.[92] The Court's opinion expressly indicates approval of the district court's approach, stating,

> Nor are we persuaded by the argument that, because the evidence adduced at the hearing of the pickets' conduct throughout the period would not be sufficient * * * to sustain convictions on a criminal trial, it was demonstrated that the State had no expectation of securing valid convictions. * * * This argument mistakenly supposes the "special circumstances" justifying injunctive relief appear if it is shown that the statute was in fact violated. But the question for the District Court was not the guilt or innocence of the persons charged; the question was whether the statute was enforced against them with no expectation of convictions but only to discourage exercise of protected rights. The mere possibility of erroneous application of the statute does not amount "to the irreparable injury necessary to justify a disruption of orderly state proceedings." * * * The issue of guilt or innocence is for the state court at the criminal trial; the State was not required to prove appellants guilty in the federal proceeding to escape the finding that the State had no expectation of securing valid convictions. Appellants say that the picketing was non-obstructive, but the State claims quite contrary, and the record is not totally devoid of support for the State's claim. 390 U.S. at 621, 622, 88 S.Ct. at 1341.

■■■■■ Thus, certain basic principles can be said to emerge from the *Dombrowski* and *Cameron* decisions. Where a federal district court is faced with an attack upon the good-faith enforcement of a statute regulating expression, it must adjudicate the claim. Such an adjudication, however, does not entail the determination of the guilt or innocence of the plaintiff. The court need only hold a hearing to determine whether or not there is sufficient or probable cause for good faith prosecution. If it should then appear that the application of the statute is in bad faith for the purpose of discouraging protected activities, federal injunctive relief is justified. If not, no further federal intervention is warranted.

The defendants have filed a "supplemental memorandum" directing the Court's attention to another recent Supreme Court decision, the affirmation of Zwicker v. Boll, 270 F.Supp. 131 (W.D. Wisc.1967), aff'd 391 U.S. 353, 88 S.Ct. 1666, 20 L.Ed.2d 642 (1968). The questions involved in *Zwicker* are substantially similar to those involved in the instant suit. The plaintiffs, who had been arrested for "disorderly conduct" during protest demonstrations at the University of Wisconsin, sought a declaratory judgment that the Wisconsin disorderly conduct statute was unconstitutional on its face and an injunction restraining the criminal prosecutions under that statute which were pending against them. The statute was challenged as being both overly broad and vague. In addition, the plaintiffs alleged that their arrests were made and prosecutions instituted for purposes of harassment and in a discriminatory manner on account of their political beliefs.

A three-judge court was convened, which dismissed the complaint after a hearing. Opinions were filed by each of the members of the Court. Judge Gordon, the author of the Court's opinion, concluded that prior limiting interpretations of the disorderly conduct statute by the Wisconsin Supreme Court obviated any constitutional infirmities alleged to exist in the statute itself.[93] He also found that the plaintiffs' pleadings and offers of proof failed to demonstrate that the statute had been invoked solely on the basis of plaintiffs' political beliefs and concluded that further ventilation of the question was unwarranted, stating,

> The materials presently before this court convince me that precipitous federal interference with the enforce-

**92.** 390 U.S. at 619, 88 S.Ct. at 1339–1340.

**93.** 270 F.Supp. at 133–135.

ment of Wisconsin's disorderly conduct statute in the cases at bar would be an unwise intrusion upon Wisconsin's good faith administration of its criminal laws. 270 F.Supp. at 136.

Judge Fairchild concurred. Although he expressed "no final view upon any of the constitutional claims asserted by the plaintiffs" and reasoned that they would be free to raise them anew in the state court actions, he concluded that the federal anti-injunction statute, 28 U.S.C. § 2283, prohibited the issuance of an injunction in the case.[94] Judge Doyle dissented. He concluded that the statute was unconstitutional and that, in light of *Dombrowski*, a full evidentiary hearing should be held on the question of the good faith enforcement of the statute.[95]

On appeal, the Supreme Court affirmed the judgment of the district court in a two-sentence *per curiam* opinion citing only the second *Cameron* decision.[96] Mr. Justice Douglas dissented from this disposition. Essentially, he believed that the Court misread the ruling of the three-judge court to include a finding that there was no evidence of bad faith enforcement even though no hearing had been held on the subject. In the light of the allegations by plaintiffs of bad faith enforcement incidental to their arrests, he found that an important issue of fact was raised and concluded that the judgment should be vacated and the case remanded for a hearing on that issue.[97]

The defendants in the instant action contend that *Zwicker* is controlling authority on the issues presently before this Court. They read *Zwicker* to require abstention on the issue of the propriety of the arrests involved in this suit. In essence, they urge that *Zwicker* greatly limits, if not overrules, *Dombrowski* and its related decisions.

As has been discussed above, *Dombrowski* and both *Cameron* decisions directly or inferentially dictate that a federal district court hold a hearing and make a preliminary determination as to whether or not the conduct in question is constitutionally protected activity where the presumed good-faith enforcement of a statute regulating expression is challenged. In substance, then, it is the defendants' position that in *Zwicker* the Court overruled its relatively clear holdings in these prior decisions. This interpretation of *Zwicker* is, at best, highly speculative.

A more reasonable interpretation of the Court's *per curiam* order is that it found there was sufficient basis or probable cause for the arrests in question. The lower court apparently had before it various offers of proof in addition to the pleadings.[98] On the basis of this record, Judge Gordon seemed to conclude that the plaintiffs' claims were frivolous [99] and Judge Fairchild, the author of the concurring opinion, concluded that the propriety of the arrests was merely "debatable." [100] The order of the Supreme Court would appear to indicate, therefore, that, on the basis of the record below, it was satisfied that the prosecutions in question were instituted in good faith. So viewed, the decision is consistent with the second *Cameron* decision which is the sole cited ground for the *per curiam* affirmance.

At the present time, this Court has received no evidence of any sort in the instant suit relating to the good faith of or probable cause for the arrests and prosecutions in question. The Court has before it only the bare pleadings of the respective parties. The plaintiffs allege that the arrests and prosecutions in question were effected without probable cause and in a discriminatory manner solely for the purpose of discouraging them in the exercise of their constitutionally protected freedoms. In addition, they allege that

---

94. Id. at 136–138.

95. Id. at 138–146.

96. Zwicker v. Boll, 391 U.S. 353, 88 S.Ct. 1666, 20 L.Ed.2d 642 (1968).

97. Id. 391 U.S. at 358, 88 S.Ct. at 1670.

98. See 270 F.Supp. at 133.

99. See id. at 135–136.

100. Id. at 137.

certain of the plaintiffs have been confined subject to unreasonable and arbitrary bail for protracted periods of time in furtherance of the defendants' scheme to discourage the activities of all of the plaintiffs. The defendants deny these allegations and have moved to dismiss the action. Upon such a motion, plaintiffs' allegations must be taken as true. If true, they constitute grounds for relief under the Civil Rights Act, 42 U.S.C. § 1983.[101] Plaintiffs' claims can not be dismissed as being insubstantial. Indeed, if they are true, they suggest a substantial impairment of the plaintiffs' freedoms of expression and possibly the impairment of the exercise of these freedoms by others. These allegations, therefore, present factual issues, requiring a plenary hearing before their truth may be ascertained.

Accordingly, it would appear incumbent upon this Court under the *Dombrowski* and *Cameron* decisions to order a hearing at which it can be determined whether the conduct of the various plaintiffs was of such a nature as to constitute sufficient cause for prosecution under the statutes or ordinances herein involved or whether these provisions have been enforced by the defendants in an improper and discriminatory manner solely for the purpose of discouraging plaintiffs' exercise of constitutionally protected activities. There remains, however, the defendants' contention concerning the applicability of the anti-injunction statute.

The Applicability of 28 U.S.C. § 2283

 The defendants contend that the anti-injunction statute, 28 U.S.C. § 2283, bars a federal injunction of the pending prosecutions against certain plaintiffs. This section provides:

> A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The plaintiffs' allegations, however, state a cause of action under the Civil Rights Act, 42 U.S.C. § 1983. Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, *suit in equity, or other proper proceeding for redress.* (emphasis added)

Thus, the question posed by the defendants is essentially whether or not section 1983 of the Civil Rights Act is an exception to the general prohibition of section 2283 of the Judiciary Act.

Although a number of lower federal courts have considered this issue, there has been no consensus. The Court of Appeals for the Third Circuit has held that § 1983 constitutes an express authorization for the granting of an injunction against state courts proceedings within the meaning of § 2283.[102] The Seventh Circuit has held that it does not.[103]

---

101. Dombrowski v. Pfister, 380 U.S. 479, 490, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

102. Cooper v. Hutchinson, 184 F.2d 119, 124 (3d Cir. 1950).
See, also, Tribune Review Publishing Co. v. Thomas, 153 F.Supp. 486, 490 (W.D.Pa.1957).
In Hulett v. Julian, 250 F.Supp. 208 (M.D.Ala.1966), a three-judge district court enjoined a state court proceeding in a case under the Civil Rights Act, even though it noted that section 2283 would normally bar such relief.

Similarly, in Carmichael v. Allen, 267 F.Supp. 985, 1000 (N.D.Ga.1967), a three-judge district court granted injunctive relief against pending prosecutions in a state court. Its opinion, however, did not consider or discuss the effect of section 2283.

103. Goss v. State of Illinois, 312 F.2d 257, 259 (7th Cir. 1963); Smith v. Village of Lansing, 241 F.2d 856, 859 (7th Cir. 1957). See, also, Progress Dev. Corp. v. Mitchell, 182 F.Supp. 681, 714 (N.D.Ill.1960); Island Steamship Lines,

The Fourth Circuit in Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964) held, in a lengthy opinion, that section 1983 was not an express exception to section 2283. In reaching this conclusion, the majority opinion in *Baines* draws a contrast between the nature of the recognized exceptions to the anti-injunction statute and a general grant of equity jurisdiction.[104] The recognized exceptions to the anti-injunction statute, it notes, rest on statutory provisions which are "thoroughly incompatible with a literal application of the anti-injunction statute," i. e., each contemplated the removal or foreclosure of proceedings in state tribunals once the action was instituted in the federal court.[105] In contrast, a general grant of equity jurisdiction, such as that conferred on the federal courts by the Civil Rights Act, "is in no sense antipathetic to statutory or judicially recognized limitations on its exercise." The effective prohibition of the anti-injunction statute, the majority reasoned, was over matters over which the district courts normally have general equity jurisdiction.[106]

This reasoning is open to question in several respects. First, to be an express exception, a statutory grant of jurisdiction need not specifically mention the anti-injunction statute.[107] An express exception has often-times been found by implication. Second, an "incompatibility" standard is not the only basis on which the presently recognized statutory exceptions to the anti-injunction statute may be explained. The express exceptions to this prohibition derive content from the concrete situations which gave rise to them. Each case has involved a specific and clearly delineated federal remedy available to private citizens in the federal courts. Under certain circumstances, this remedy would be meaningless unless the federal court were to enjoin certain proceedings in state courts because the state proceedings, if not stayed, could undercut or destroy the remedy. An injunction to stay the state courts may be necessary if an effective remedy is to be preserved. In such a situation, an express exception to the anti-injunction statute has been implicitly found to exist because it is a "necessary concomitant of the need to vindicate federally-created rights." [108]

Third, in the sense that the majority in *Baines* did not take into account the historical implications of the Civil Rights Act, its analysis of this question is incomplete. Section 1983 is derived from section 1 of the 1871 "Act to Enforce the Fourteenth Amendment." [109] Thus, it must be construed in the light of the Civil War Amendments and the statutory protections passed by Congress during the Reconstruction period.

Inc. v. Glennon, 178 F.Supp. 292, 295 (D.Mass.1959).

The Sixth Circuit has reached a result consistent with that of the Seventh Circuit. See Sexton v. Barry, 233 F.2d 220, 225–226 (6th Cir. 1956).

104. 337 F.2d at 587–590.

105. Id. at 589. See, also, Note, 50 Va.L. Rev. 1404, 1409–10 (1964).

106. Id. at 589. The three-judge court in Cameron v. Johnson, 262 F.Supp. 873, 877–878 (S.D.Miss.1966), considered this question. Relying primarily on the *Baines* decision, a two-to-one majority concluded that § 1983 did not constitute an exception to the anti-injunction statute. On review, the Supreme Court found it unnecessary to consider this question and intimated no view as to the correctness of the district court's conclusion. Cameron v. Johnson, 390 U.S. 611, 613, 614, 88 S.Ct. 1335, 1337, 20 L.Ed.2d 182 (1968).

107. See, e. g., Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); Amalgamated Clothing Workers of America v. Richman Bros. Co., 348 U.S. 511, 516, 75 S.Ct. 452, 99 L.Ed. 600 (1955) (dictum); Porter v. Dicken, 328 U.S. 252, 66 S.Ct. 1094, 90 L.Ed. 1203 (1946); Dilworth v. Riner, 343 F.2d 226 (5th Cir. 1965).

108. Cameron v. Johnson, 262 F.Supp. 873, 884 (S.D.Miss.1966) (dissenting opinion). See, also, Note, 21 Rutgers L.Rev. 92, 99–105 (1967).

109. Act of April 20, 1871, ch. 22, § 1, 17 Stat. 13.

The legislation of the Reconstruction period was designed not only to secure the full rights of citizenship for all men, but also to alter the balance of power between state and federal authorities which had existed from the beginning of our federal system. The effect on the federal system of this legislation is evident from even a casual examination. For the first time, the national government was vested with the major responsibility of protecting every individual in the full enjoyment of his rights of person and property. The Fourteenth Amendment is explicit in this regard. It places clear prohibitions on the states and gives Congress the affirmative power to enforce them. The Thirteenth and Fifteenth Amendments contain similar grants to Congress. The Civil War Amendments, therefore, reflect a constitutional revolution in the nature of American federalism.

 This revolution, in turn, represents a historical judgment. It emphasizes the overwhelming concern of the Reconstruction Congresses for the protection of the newly won rights of freedmen. By interposing the federal government between the states and their inhabitants, these Congresses sought to avoid the risk of nullification of these rights by the states. With the subsequent passage of the Act of 1871, Congress sought to implement this plan by expanding the federal judicial power. Section 1983 is, therefore, not only an expression of the importance of protecting federal rights from infringement by the states but also, where necessary, the desire to place the national government between the state and its citizens.[110]

In contrast, section 2283 and its predecessors date back to the Congress of 1793.[111] Its purpose is primarily to allow state courts to proceed to the determination of issues involving state law which might otherwise be drawn to the federal courts.[112] It represents, therefore, an expression of the concept of American federalism that the national sovereign shall treat the states with a certain deference and respect in their sphere of operations; it expresses a congressional policy aimed at preventing "needless friction" between state and federal courts.[113]

 Thus, when the anti-injunction statute and the Civil Rights Act are viewed in their historical posture, their relationship becomes clearer. Section 1983, a product of a later Congress and an expression of an overwhelming Congressional concern for the protection of federal rights from deprivation by state action, would seem to have been intended to be an exception to the general limitation of section 2283.[114]

 Moreover, section 2283 is not a jurisdictional statute. In spite of its absolute language, it does not prevent a federal court from enjoining state court proceedings where special circumstances justify such relief. It is essentially a statutory adoption of the doctrine of comity and its demand is directed to the discretion of the federal court.[115]

110. Note, 21 Rutgers L.Rev. 92, 105–15 (1967). See, also, Note, 71 Yale L.J. 1007 (1966). Cf. Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 L. & Contemp.Prob. 216, 230 (1948).

111. The history of section 2283 is discussed at length in Toucey v. New York Life Insurance Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941). See, also, Amalgamated Clothing Workers of America v. Richman Bros. Co., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955); Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp., 244 F.2d 394 (5th Cir. 1957).

112. Cameron v. Johnson, 262 F.Supp. 873, 884 (S.D.Miss.1966) (dissenting opinion).

113. See Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 309 U.S. 4, 9, 60 S.Ct. 215, 84 L.Ed. 447 (1939).

114. Note, 21 Rutgers L.Rev. 92, 108–09 (1966).

115. E. g., Baines v. City of Danville, 337 F.2d 579, 593 (4th Cir. 1964); Southern California Petroleum Corp. v. Harper, 273 F.2d 715, 718–719 (5th Cir. 1960); Cameron v. Johnson, 262 F.Supp. 873, 886–887 (S.D.Miss.1966) (dissenting opinion); Feldman v. Pennroad Corp., 60 F.Supp. 716 (Del.1945), aff'd. 155 F.2d

■ Nevertheless, we recognize that a federal court should exercise this discretion in careful regard of the historical reluctance of the federal courts to interdict state judicial proceedings. The Court of Appeals for the Fourth Circuit recognized this distinction in the *Baines* case and, hence, buttressed its conclusion on traditional views of comity, stating,

> Our construction is strongly supported by the Supreme Court's consistent support of the principle of § 2283 in civil rights cases. In every case before the Supreme Court in which federal interference with state court proceedings has been premised upon asserted denials of civil rights, the Supreme Court has required or sanctioned federal forbearance. It has usually done so on the basis of considerations of equity and comity fashioned by it, but which are identical with those which underlie the statute. If judicial principles of equity and comity prevent federal stay of criminal proceedings in a state court, it is difficult to see how an unqualified congressional command to the same end can be ignored. If a subsequent act of Congress is an implied repeal of the absolute congressional direction, it cannot reasonably be said not to have modified a judicially fashioned rule which, at best, is coextensive with the earlier statute. 337 F.2d at 591.

However, the *Dombrowski* and *Cameron* decisions cast doubt on this reasoning, if not the ultimate conclusion which the Fourth Circuit reached in *Baines*. The same considerations which the Supreme Court recognized in *Dombrowski* to require federal equitable relief where individuals or groups are being officially harassed, whether by threatened or actual prosecution for improper reasons unrelated to any valid state purpose or without probable cause in violation of their constitutionally protected freedoms, support the conclusion that section 2283 is inapplicable under such circumstances. The alternative view that section 2283 bars a prayer for injunctive relief of all pending prosecution would severely limit the effective scope of section 1983. The scope of the remedy would then depend on the mere fortuity that the person affected by such harassment had instituted a suit in the federal court before formal charges were brought against him in the state courts.

■ That the lawful exercise of constitutionally protected rights should depend on such a fortuitous distinction would indeed be anomalous.[116] The only reasonable and rational conclusion, therefore, is that section 2283 is inapplicable where it is proven that a state statute is unconstitutional as too vague or broad or is being enforced in bad faith for the purpose of discouraging protected activities.[117]

733 (3d Cir. 1946), cert. denied, 329 U.S. 808, 67 S.Ct. 621, 91 L.Ed. 690 (1947).

116. The underlying logic of a distinction between preventing the institution of an illegal local prosecution and permitting the continuance of such a prosecution has been the subject of recent criticism. See City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 845–846, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966) (dissenting opinion); Zwicker v. Boll, 270 F.Supp. 131, 146 (W.D.Wisc.1967) (dissenting opinion). See, also, Bailey, Enjoining State Criminal Prosecutions which Abridge First Amendment Freedoms, 3 Harv.Civ.Rights, Civ.Lib.L.Rev. 67, 75–82 (1967). Cf. American Law Institute, Study of the Division of Jurisdiction between State

and Federal Courts, Tentative Draft No. 5, May 2, 1967, pp. 112–13.

117. This conclusion is consistent with both the concurring and dissenting opinions in Zwicker v. Boll, 270 F.Supp. 131 (W.D. Wisc.1967) (three-judge court). Both judges apparently adopted the proposal of the American Law Institute permitting the issuance of an injunction in situations where either the statute or other law which is the basis of a criminal prosecution plainly cannot constitutionally be applied to the party seeking the injunction or the prosecution is so plainly discriminatory against one who has engaged in conduct privileged under the Constitution of laws of the United States as to amount to a denial of equal protec-

Moreover, while the Supreme Court has never specifically passed on the point, the clear inference of its decisions and orders in *Dombrowski* and the first *Cameron* case is that section 2283 is not an absolute bar to injunctive relief in a section 1983 case where such a remedy is the only means of securing constitutionally protected rights. Inferentially at least, these decisions would appear inconsistent with the earlier Fourth and Seventh Circuit decisions holding section 2283 a bar and consistent with the contrary decision of the Third Circuit.

Under the circumstances and for the foregoing reasons, we hold that defendants' motions to dismiss must be denied. An appropriate order will enter.

tection. See American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts, § 1372, Tentative Draft No. 5, May 2, 1967, pp. 31–2. They disagreed, however, as to the applicability of that proposal in that suit. See 270 F.Supp. at 137–138 (concurring opinion); id. at 146 n. 3 (dissenting opinion).