**Lula WILSON, Plaintiff,**

v.

**Raymond F. SIMON, Corporation Counsel, City of Chicago; John Stamos, State's Attorney, Cook County, Illinois; Officer Rollin, Badge No. 3174 of the Chicago Police Department; William Nyden and Frank Jakubowski, Deputy Sheriffs of Cook County, Illinois; and Second Mercantile Financial Corporation, Defendants.**

**No. 68 C 1561.**

United States District Court
N. D. Illinois, E. D.

April 30, 1969.

Joseph V. Karaganis, Chicago, Ill., for plaintiff.

Edward V. Hanrahan, State's Atty., Cook County, Daniel P. Coman, Chief, Civil Division and Dean H. Bilton, Asst. State's Attys., for defendants Hanrahan, Nyden and Jakubowski.

Raymond E. Simon, Corp. Counsel and B. Novoselsky, Asst. Corp. Counsel, for defendant City of Chicago and defendant Rollin.

## MEMORANDUM AND ORDER

CAMPBELL, Chief Judge.

This action brought by plaintiff under the Federal Civil Rights Act (42 U.S.C. § 1983) seeks an award of money damages and an order restraining the prosecution of certain criminal proceedings presently pending against plaintiff in the state court.

In her amended complaint[1] plaintiff alleges that on July 18, 1968 defendants Nyden and Jakubowski in their capacities as deputy sheriffs of Cook County, Illinois, attempted to serve a civil writ on plaintiff and pursuant to the writ attempted to take possession of a television set. Plaintiff further alleges that she refused to allow Nyden and Jakubowski to enter her dwelling whereupon the deputies enlisted the aid of defendant Rollin, a police officer of the City of Chicago. Officer Rollin, according to the complaint, gained entry to plaintiff's dwelling without plaintiff's consent and without legal authority by physically forcing open the door leading to plaintiff's apartment. Upon plaintiff protesting, Officer Rollin then placed her under arrest. Upon her further protestations, plaintiff alleges that Nyden and Jakubowski squirted a liquid chemical substance in her face while Officer Rollin subjected her to a physical search of her person. Nyden and Jakubowski then removed the television set from plaintiff's dwelling. Plaintiff was charged with interfering with service of process in violation of a state statute[2] (Ill.Rev.Stat. C. 38 § 31–3) and with disorderly conduct in violation of an ordinance of the City of Chicago (Municipal Code § 193–1a).

Plaintiff further alleges that her conduct in resisting the entry of the defendants into her residence was lawful and that her protestations constituted a legitimate exercise of her right of free speech as guaranteed by the First Amendment to the United States Constitution.

Plaintiff further complains that despite the "clear legality" of her conduct, defendants Stamos[3] and Simon in their capacities as prosecutors for the County of Cook and the City of Chicago respectively, have continued to prosecute plaintiff with the charges of interfering with service of process and disorderly conduct. Considering what she views as a "total absence of evidence" of criminal conduct plaintiff alleges that the continued prosecution is in bad faith and constitutes further deprivation of her rights. Plaintiff has also filed a motion for temporary restraining order, prohibiting her prosecution. Plaintiff also challenges the adequacy of the Illinois State criminal system and argues that the intervention of this court is necessary to protect her rights under the First and Fourteenth Amendments of the United States Constitution. Summarized, plaintiff's theory is that the prosecution in the state court is in bad faith, and has a "chilling effect" on her exercise of First Amendment rights as she wants to continue "speaking out" against these defendants. Furthermore, she alleges that her rights cannot be protected in the state court because, "the state criminal system is grossly inadequate in protecting plaintiff, an innocent citizen, from groundless charges."

In answer to the complaint and the motion for a temporary restraining order and preliminary injunction, certain defendants have filed motions to dismiss. Essentially the basis of the motions to dismiss are: (1) That the complaint fails to state a claim under the Civil Rights Act; (2) That the doctrine of Abstention requires this court to refrain from interfering with the prosecution until the state court has had an opportunity to determine the issues; and (3) That this court is barred by the "Anti-Injunction Act" (28 U.S.C. § 2283) from

1. The original complaint named the Sheriff of Cook County and an Assistant Corporation Counsel of the City of Chicago. The amended complaint did not name these individuals, but instead named the Deputy Sheriffs and the Corporation Counsel.

2. The complaint states that plaintiff was charged with resisting a police officer in violation of Ill.Rev.Stat. C. 38 § 31–1.

The later filed motion for temporary restraining order, however, described the violation as interfering with process. (C. 38 § 31–3)

3. Since the initial filing of the complaint, defendant Stamos has been succeeded in office by Edward V. Hanrahan who has been substituted as party defendant and as attorney for the County employee defendants.

enjoining a pending proceeding in the state court.

█ The Cook County State's Attorney, on his own behalf and as attorney for defendants Nyden and Jakubowski, deputy sheriffs of Cook County, subsequently withdrew their motions to dismiss the complaint and filed an answer, in effect, admitting that the facts as pleaded in plaintiff's complaint, if proven, state a claim for relief in the form of money damages against the defendant deputy sheriffs. I agree, accepting the facts as pleaded, that the complaint does state a claim under the Civil Rights Act. Accordingly, all other pending motions to dismiss the complaint are *denied.*

The State's Attorney, like the Corporation Counsel of the City of Chicago, continues to oppose plaintiff's motion for temporary restraining order stressing that such action in this case is barred by the Anti-Injunction Act (28 U.S.C. § 2283). A resolution of this question requires an analysis of section 2283, measured against the allegations in plaintiff's complaint and motion.

In her motion plaintiff alleges that the charges brought by the County and City are set for immediate trial in the Circuit Court of Cook County. In her view, the crux of the criminal charges is that she resisted the entry of the deputy sheriffs and Chicago police officer when they sought to take possession of the property named in the writ of replevin. Plaintiff alleges that the service of the writ was not made in a manner authorized by law because the deputy sheriffs did not inform plaintiff of her right under the state Replevin Statute to file a bond in double the amount of the value of the property if she desired to retain possession. Therefore, plaintiff argues, since the writ was illegally served, her resistance was not unlawful under state law. Thus, she is innocent of the charges brought by the County and City and in light of her alleged innocence, any prosecution of her must be in bad faith and in violation of the due process requirements of the United States Constitution.

As above stated, plaintiff also alleges that the prosecution is being continued to intimidate her from pursuing her right to speak out against the alleged civil rights deprivations inflicted upon her by certain of the defendants. For this reason and because the state criminal system is, "grossly inadequate in protecting plaintiff, an innocent citizen from groundless charges", plaintiff argues that it is appropriate for this court to intervene to protect her rights under the First and Fourteenth Amendments of the United States Constitution.

Before discussing the arguments and authorities presented by plaintiff in support of her motion for temporary restraining order and the arguments and authorities presented by the County and City in opposition, I offer some preliminary observations. First, as I read plaintiff's motion and arguments, I am to conclude that the prosecution of plaintiff is in bad faith and in violation of the United States Constitution because plaintiff is in fact innocent of the charges brought by the County and City authorities. I must therefore determine that innocence, or at least some probability of it, before I find the requisite "bad faith." This, of course, involves an interpretation and construction of the state statutes under which the plaintiff is being prosecuted as well as the Replevin Statute upon which her defense is partially based. Upon a finding of innocence, I am then asked to determine that the "groundless" state court prosecution inhibits plaintiff's right to speak out against the defendants and that the state criminal system is inadequate to protect her from groundless charges such as these. For the reasons I shall discuss in detail, I decline the invitation extended by plaintiff's motion to embark on this pointless adventure.

The Anti-Injunction Act, 28 U.S.C. section 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdic-

tion, or to protect or effectuate its judgments."

■ Our Seventh Circuit Court of Appeals has held that the Civil Rights Act, the basis of this action, does not authorize an exception to the clear mandate of section 2283. Smith v. Village of Lansing, 241 F.2d 856 (1957); Wojcik v. Palmer, 318 F.2d 171 (1963); Goss v. Illinois, 312 F.2d 257 (1963). See also Baines v. City of Danville, 4th Cir. en banc, 337 F.2d 579 (1964) and Sexton v. Barry, 6th Cir., 233 F.2d 220 (1956); but Cf. Cooper v. Hutchinson, 3rd Cir., 184 F.2d 119 (1950).

Plaintiff acknowledges the conclusion of these cases but points out that this conclusion, "has recently been the subject of some articulate criticism by a Judge of this court", citing the opinion of Judge Hubert L. Will in Landry v. Daley, 288 F.Supp. 200 (1968).

There is a basic distinction between the facts in this case and those in Landry and the cases cited therein, particularly Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965) and 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); and Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). In all of those cases the parties seeking injunctive relief were engaged in organized activities relating directly to free speech. There was also an allegation that the prosecution sought to be enjoined was part of an unconstitutional scheme illegally to regulate or otherwise impinge on their freedom of expression. The "chilling effect" on free speech in those cases went much further than that alleged here, where an individual state court defendant seeks only to protest her own alleged guilt.

In prior cases where injunctive relief was granted there was much more at stake than the liberty of a single defendant in a state court proceeding. On the contrary, in those cases there was a strong suggestion that the prosecution carried with it a threat of future arrests of the plaintiffs if they persisted in their First Amendment activities and considerable evidence that the prosecution was intended to have a deterrent effect on others who were engaged in similar activities. These collateral suppressive effects generally weighed more heavily in the court's consideration than the relatively minor prosecutions which were enjoined.

My reasons for rejecting plaintiff's arguments, however, run deeper than the distinctions I see between this case and Landry.[4] In the final analysis, I disagree in legal principle and as a matter of judicial policy with the conclusions reached in Landry.

The background, history and purposes of section 2283 are thoroughly discussed in Landry and also by the Fourth Circuit Court of Appeals sitting, en banc in Baines v. City of Danville, 337 F.2d 579 (1964). Those decisions, though they reach contradictory results, contain a complete discussion of the history, background and principles involved in section 2283. Both recognize the traditional reluctance of federal courts to interfere with state judicial proceedings. Both agree that the same basic considerations of equity and comity which support the judicially developed doctrine which forbids federal interference with the state court proceedings underlie section 2283. Both also agree that section 2283 is not a jurisdictional statute, and that under certain compelling circumstances its commands may be disregarded. Agreement on such broad general principles is usually easy. The difficulty arises when a court must determine what constitutes such "compelling" or extraordinary circumstances. That is where the courts in Baines and Landry differ.

A discussion of their differences should appropriately start with citation of the Supreme Court decision of Douglas v. City of Jeannette, 319 U.S. 157,

4. As I shall discuss below, I see further basic distinctions between Landry and the Supreme Court decisions upon which it relies.

63 S.Ct. 877, 87 L.Ed. 1324 (1943). The *Douglas* case is cited and discussed in every decision on this subject including *Baines* and *Landry*, both of which claim to be consistent with *Douglas*. In *Douglas* the court summarized the principles involved.

"Notwithstanding the authority of the district court, as a federal court, to hear and dispose of the case, petitioners are entitled to the relief prayed only if they establish a cause of action in equity. Want of equity jurisdiction, while not going to the power of the court to decide the cause * * * may nevertheless, in the discretion of the court, be objected to on its own motion. * * * Especially should it do so where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.

The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted by federal district courts only in obedience to Congressional legislation in conformity to the judiciary Article of the Constitution. Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds. * * *

It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is im-mune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. * * Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.' * * * " (319 U.S. at 162–164, 63 S.Ct. at 880–881).

The Court in *Douglas* concluded that there was "the want of equity in the cause," stating,

"It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued to this Court." (319 U.S. at 164, 63 S.Ct. at 881)

In discussing the general policy of federal deference to state tribunals which the Supreme Court recognized in *Douglas* and similar decisions, Judge Will observed that those decisions were based on the, "underlying assumptions that state courts and prosecutors would observe constitutional limitations and that the normal adjudication of constitutional defences in the course of a state criminal prosecution could assure adequate

vindication of constitutional rights". (288 F.Supp. at 212). Furthermore, where these assumptions are unwarranted, federal intervention is proper. (Id. at 214). In other words, where it is established that the assumptions are unwarranted, the extraordinary circumstances exist. I have little disagreement with this proposition. The same proposition was expressed by the Supreme Court in Dombrowski v. Pfister, *supra*. Having accepted this proposition, Judge Will reasons, and reads *Dombrowski* as requiring, that the mere allegation that a statute "regulating expression"[5] is either (1) unconstitutionally vague or overly broad, or (2) the basis of a threatened bad faith application, a federal court must grant an immediate hearing into the merits of the claim. This drastic action is required, it is argued, because actual or even threatened prosecution has a "chilling effect" on freedom of expression which must be immediately dispelled. Moreover, "Defense in a state criminal prosecution is not sufficient to remove this 'chill' because it leads to piecemeal construction which resolves only the doubts of the defendant with no likelihood of obviating similar uncertainty for others,"[6] and bad faith prosecutions, "serve notice on the community that the exercise of these rights may be an expensive proposition". (288 F.Supp. at 216, 217).

Judge Will reads Cameron v. Johnson, *supra*, as reaffirming his interpretation of *Dombrowski*, i. e., that the mere allegation of unconstitutionality or bad faith prosecution requires a federal court to hold a hearing. *Cameron* is also read as establishing the standards for the hearing when one is required. The district court need not determine the guilt or innocence of the accused but only whether there is substantial cause in law and fact supporting the prosecution. (288 F.Supp. at 218, 219 and 390 U.S. at 621, 622, 88 S.Ct. 1335) Summarizing the principles of *Dombrowski* and *Cameron* the learned Judge states:

"Thus, certain basic principles can be said to emerge from the Dombrowski and Cameron decisions. Where a federal district court is faced with an attack upon the good-faith enforcement of a statute regulating expression, it must adjudicate the claim. Such an adjudication, however, does not entail the determination of the guilt or innocence of the plaintiff. The court need only hold a hearing to determine whether or not there is sufficient or probable cause for good faith prosecution. If it should then appear that the application of the statute is in bad faith for the purpose of discouraging protected activities, federal injunctive relief is justified. If not, no further federal intervention is warranted." (288 F.Supp. at 219)

Further, these principles are said to be in no way affected by the Anti-Injunction Statute, section 2283. (288 F.Supp. 221, et seq.)

I note first that *Dombrowski* did not involve section 2283. In *Cameron* the district court on remand of the original case held that section 2283 prohibited the court from enjoining or abating the criminal prosecutions initiated against the appellants prior to the filing of the federal suit and further that the Civil

---

5. The opinion does not define what statutes regulate expression. The statutes covered a wide range of violations. (E. g. Resisting a Police Officer, Mobaction, Disorderly Conduct, Aggravated Assault and Aggravated Battery.) The statutes in *Dombrowski, Cameron* and *Zwickler* were more directed to what I would define as those regulating expression. (e. g. Distribution of Political Handbills (*Zwickler*); Subversive Activities and Communist Control Law and the Com-

munist Propaganda Control Law (*Dombrowski*); and, Anti-Picketing Law (*Cameron*)).

6. Again, this feature distinguishes *Landry* from the case before me. There is no allegation in this case that prosecution has a "chilling" effect on the First Amendment rights of others. Nor is there any allegation that it is part of an unconstitutional scheme.

Rights Act (42 U.S.C. § 1983) creates no exception to section 2283. (262 F.Supp. 873, 878) In affirming on other grounds, the Supreme Court found it unnecessary to resolve either question. (390 U.S. 613, note 3, 88 S.Ct. 1335, 20 L.Ed.2d 182) *Dombrowski*, and Zwickler v. Koota, supra, did not involve pending state prosecutions, but only threatened prosecutions. My distinguished brother sees little logic in the distinction between preventing the institution of a local prosecution and permitting a pending prosecution to continue. However, section 2283, by its terms, is limited to "proceedings in a State court," and when one considers the purpose of the statute and the judicial policy of forbearance, i. e., harmony between the federal and state courts, the distinction becomes more real. Interfering with a pending prosecution is much more likely to disrupt state-federal relations than prohibiting one that is merely threatened. The Supreme Court clearly sees a distinction between "pending" and "threatened" suits. In its opinion in *Dombrowski* the court referring to section 2283, stated:

> "This statute and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted." (380 U.S. at 484, note 2, 85 S.Ct. at 1119)

The distinction is further highlighted in the dissenting opinion of Mr. Justice Harlan:

> "If the state criminal prosecution were instituted first, a federal court could not enjoin the state action. 28 U.S.C. § 2283." (380 U.S. at 499, note 1, 85 S.Ct. at 1127)

In previous cases, the court cautioned against interfering with state court criminal prosecutions. For example, in Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963), the court warned:

> "Courts of equity traditionally have refused, except in rare instances, to enjoin criminal prosecutions. This principle 'is impressively reinforced

when not merely the relations between coordinate courts but between coordinate political authorities are in issue.' Stefanelli v. Minard, 342 U.S. 117, 120 [72 S.Ct. 118, 120, 96 L.Ed. 138]. It has been manifested in numerous decisions of this Court involving a State's enforcement of its criminal law. * * * The considerations that have prompted denial of federal injunctive relief affecting state prosecutions were epitomized in the Stefanelli case, in which this Court refused to sanction an injunction against state officials to prevent them from using in a state criminal trial evidence seized by state police in alleged violation of the Fourteenth Amendment:

> '[W]e would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.'" (371 U.S. 392 at 397, 83 S.Ct. 385 at 388)

◼ Furthermore, where a prosecution is pending, one basic equitable principle may disappear from plaintiff's claim. He may then have an adequate remedy at law in the state court. Others, similarly situated but not prosecuted, will get a quick indication of how the state courts will act. Those persons with no pending prosecution might seek declaratory relief in a federal court. All of the

cases recognize that where no criminal proceedings are pending in the state court, a citizen has a right to seek redress by way of declaratory relief in a federal court and may seek a determination that a statute under which he is threatened with prosecution is unconstitutional or his constitutional rights are in some other manner being threatened or deprived. *Dombrowski* enlarges the scope of this relief and encourages its use. There is nothing in section 2283 or in the basic principles relating to state-federal relations that would prevent such action.

Or, if a plaintiff first seeks declaratory relief from the enforcement of an unconstitutional statute, a court, upon finding the statute unconstitutional, may enjoin its enforcement. This injunction is merely in aid of its already attached jurisdiction. Section 2283 specifically provides that a court may enjoin a pending state court action if it is necessary to do so in aid of its jurisdiction.

If the court finds the statute constitutional, however, the complainant must do more than merely allege bad faith enforcement to rebut the otherwise applicable presumptions of *Douglas* that the prosecution is in good faith and that therefore his state court remedies are adequate. Before a federal court will enjoin a pending state court proceeding there must be some "reasons to believe" that there will be an abuse of power, not just a mere allegation. See Zwicker v. Boll (W.D.Wis., 1967), 270 F.Supp. 131. "There is a difference between allegation of wrong and evidence or color of wrong." (Id. 136). The lower three judge court in Cameron v. Johnson seems to go even further, holding, as to a *pending* prosecution, that once the constitutionality of the statute is established section 2283 constitutes a bar to further injunctive relief. The court did make a finding that the prosecution was in good faith, however, and therefore the Supreme Court on review found it unnecessary to consider this question. In summary, I must respectfully disagree with my learned brother and conclude that nothing in the cited cases supports the holding in *Landry*, that the mere allegation, without more, of bad faith enforcement of a *valid* statute requires this court to hold a hearing to determine whether a *pending* state prosecution may be permitted to continue.

But, while I disagree with the rationale in *Landry*, I must also oppose it more for its result. Certain of the plaintiffs there were charged in the state court under state statutes which the court had found constitutional. On the plaintiffs' allegation that the prosecutions were proceeding in "bad faith" the court ordered an "ad hoc" probable cause hearing. On the basis of the rationale in *Landry*, I am told here by plaintiff's counsel that I must hold an "ad hoc" probable cause hearing in this case to determine whether the County and City prosecutors can go forward in the state court with what must be considered a very routine misdemeanor prosecution.

If I accept plaintiff's argument, which gains its support only from *Landry*, I would be obliged to hold a hearing in this case to determine the motives of the respective prosecutors. To establish that the prosecution is not brought in good faith, plaintiff offers to prove, in effect, that she is not guilty of the offense charged. I recognize that in *Landry* the court held that it is not necessary to determine the innocence or guilt but only the question of probable cause, that is, whether there is enough evidence in the case to establish that the motives of the prosecutions are pure. In this case, however, that determination requires an analysis of a number of Illinois statutes. The effect of the analysis will undoubtedly eventually determine the guilt or innocence of the plaintiff. If in the end I find against plaintiff, I can only deny the motion for temporary restraining order and permit her to relitigate her guilt or innocence in the state court. All this, on a mere allegation of bad faith supported only by a deposition indicating the possibility that a State Replevin Statute may not have been strictly complied with.

As Judge Gordon, writing the majority opinion in Zwicker v. Boll stated: "There is a difference between allegation of wrong and evidence or color of wrong". (270 F.Supp. at 136). What evidence of wrong is presented by plaintiff in this case? She alleges that she was not informed of her right under the Replevin Act to post bond in double the amount of the value of the property[7] and that, therefore, under Illinois law the service of the writ was not made in a lawful manner. This being so, she further alleges, her interference with the service of the writ, again under Illinois law, would not be unlawful. Though not mentioned in her motion or memorandum, I presume the argument applies as well to the pending disorderly conduct charge. But assuming *arguendo* that all this be true, intelligent judicial administration and the rationale of *Douglas* dictates that we must assume that the prosecution will proceed in good faith and ultimately reach a just termination.

Her protestations of innocence are not evidence of bad faith prosecution. They are only denials of guilt common to almost every criminal case. Many criminal defendants deny their guilt, many also prove their claim by court adjudication. Is this evidence that their prosecutions were in bad faith?

■ Plaintiff also alleges that the prosecution is intended to intimidate her from pursuing her right to speak out against the alleged "civil rights deprivations inflicted upon her." I presume this allegation is intended to supply the so-called "chilling effect" on First Amendment rights referred to in the cases. This allegation likewise is not supported by any evidence. Nothing here prevents plaintiff from "speaking out". Plaintiff alleges that one means of speaking out is this federal lawsuit and that she believes the purpose of the state prosecution is to induce her to dismiss this action. This allegation is plainly contradicted by the facts. The prosecution was started before this suit was filed.

■ Finally, plaintiff alleges that the state criminal system is inadequate in protecting plaintiff, "an innocent citizen, from groundless charges". Again, there is simply a bare allegation, unsupported by any evidence. In her memorandum in support of the motion she suggests that the state system is inadequate because of the lengthy delay involved in vindicating this right. Again, this allegation is refuted by the record. Her case would have been heard in the state court long ago had she not obtained continuances based on the pendency of this federal suit which she initiated. She presents no other reasons in support of her allegations of inadequacy of the state court. But, running throughout her argument is the notion that her claims will not be fairly heard in the state court. This unsupported notion does not void the assumptions of fairness referred to in *Douglas*. My own experience and my knowledge of the Illinois Courts likewise supports the *Douglas* assumptions. As flattering as the thought may be, this federal court has no monopoly on judicial virtue. There is no reason to believe plaintiff's case will not be treated fairly and impartially in the state court.

There is another very practical reason which supports the denial of plaintiff's motion. By granting such a motion, every state criminal defendant would be encouraged to file similar actions here. No criminal defense attorney worth his salt would let pass this opportunity for a partial if not a complete disclosure of the state's case and great delay in ultimate prosecution. While I have long been an advocate of complete and open discovery in criminal cases, I cannot permit this court to become a magistrate's court for state pretrial discovery via "ad hoc" probable cause hearings.

For all of the reasons stated herein, the motion for temporary restraining order is *denied*.

---

7. Depositions of defendant deputy sheriffs indicate that she was not so advised.