**Arthur TURCO, Jr., and the Black Panther Party, Plaintiffs,**

**v.**

**Milton B. ALLEN, State's Attorney, Baltimore City, et al., Defendants.**

**Civ. No. 71–859.**

United States District Court, D. Maryland.

Nov. 19, 1971.

Harold Buchman, Baltimore, Md., Charles R. Garry, San Francisco, Cal., William M. Kunstler, New York City, Arthur Turco, Jr., Leonard Weinglass, Newark, N. J., and Gerald B. Lefcourt, New York City, for plaintiffs.

Francis B. Burch, Atty. Gen. of Maryland; Henry R. Lord, Edward F. Borgerding, Bernard L. Silbert, Baltimore, Md., for defendants.

John Henry Lewin, Jr., Baltimore, Md., for defendant Hilary D. Caplan, individually.

Frank Carrington, Richard Wright, Chicago, Ill., and James R. White, Baltimore, Md., for Americans for Effective Law Enforcement as amicus curiae.

HERBERT F. MURRAY, District Judge.

## MEMORANDUM AND ORDER

On May 1, 1970 Arthur Turco, Jr., one of the plaintiffs, was indicted by the Grand Jury of Baltimore City, Maryland and charged with participating in the torture and murder of one Eugene Leroy Anderson whose skeleton had been discovered in Leakin Park in Baltimore on October 27, 1969. Specifically, Turco was charged with conspiracy to murder, assault with intent to murder, solicitation to murder, solicitation to kidnap and accessory to murder.

A warrant was issued for Turco's arrest on April 29, 1970. Subsequently, on October 16, 1970, Plaintiff Turco was arrested in Montreal, Canada, waived extradition and agreed to voluntary deportation from Canada and returned to Baltimore City on or about December 8, 1970.

Following his return he was held without bail in the Baltimore City Jail and on December 29, 1970 he filed in this Court a petition for habeas corpus relief under 28 U.S.C.A. Section 2254 and in the alternative, for removal of his pending criminal prosecution from the Criminal Court of Baltimore to this Court under the provisions of 28 U.S.C.A. Section 1443. Thereafter, Judge James R. Miller, Jr. of this Court, held hearings on the petition on January 5, 1971 and February 5, 1971. On March 3, 1971 Judge Miller filed an opinion denying habeas corpus relief under 28 U.S.C.A. Section 2254. He also denied removal under 28 U.S.C.A. Section 1443. Turco v. State of Maryland, 324 F.Supp. 61 (D. Md., 1971); aff'd, 444 F.2d 56, 4th Cir., 1971.

The criminal case against Plaintiff Turco was tried in the Criminal Court of Baltimore City from June 16, 1971 to July 3, 1971, before Judge James W. Murphy and a jury. The jury, after receiving the case, deliberated for some thirty hours and Judge Murphy then declared a mis-trial because of their failure to agree. Counsel for defendants in the present case have advised the Court that at the time the jury was discharged, it stood 10–2 for a conviction. This is disputed by counsel for the Plaintiff Turco who stated he would stipulate that the jury stood 9–3 for conviction.

Re-trial of the charges against Mr. Turco is presently scheduled for November 29, 1971. Since the discharge of the first jury on July 3, 1971, the Plaintiff Turco has been at large following the posting of a surety bond in the sum of $10,000.00.

On August 12, 1971 Mr. Turco and the Black Panther Party filed the present action in this Court against Milton B. Allen, State's Attorney for Baltimore City, Hilary D. Caplan, Assistant State's Attorney, Donald E. Pomerleau, Police Commissioner of Baltimore City and Lt. Colonel Maurice D. DuBois, Chief of Criminal Investigation of the Baltimore City Police Department. The action is denominated as a class action, the Plaintiff Turco alleging that he sues on behalf of himself "and all other attorneys similarly situated" and the Black Panther Party alleging that it sues on behalf of itself, its chapters, affiliates and branches, and all the members thereof, as well as other organizations similarly situated.

The jurisdiction of the Court is invoked under the federal question, diversity of citizenship, civil rights and declaratory judgment sections of Title 28 U.S.C. (Sections 1331, 1332, 1343, 2201 and 2202). Specifically, federal question jurisdiction is based on the Civil Rights Act of 1964, 42 U.S.C. Section 1981 et seq. and the First, Second, Third, Fourth, Fifth, Eighth, Ninth, Tenth, Fourteenth and Fifteenth Amendments to the Constitution of the United States. The basic allegation of deprivation of the civil rights of the Plaintiff Turco is that the criminal proceeding against him was brought "in bad faith and without reasonable expectation of eventual success in order to have a chilling effect on the exercise by him and his clients, including plaintiff Party, its chapters, affiliates and branches, and/or

the members, supporters or associates thereof, of their fundamental rights of expression as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States." It is also alleged in the Complaint that the defendants Pomerleau and DuBois, in order to "harass, intimidate, deter and destroy the Baltimore Chapter of Plaintiff Party" conspired together to fabricate criminal charges that members of the said Baltimore Chapter and the Plaintiff Turco had first tortured and then executed Eugene Leroy Anderson under the impression that he was either a law enforcement officer or a police informer. It is further alleged that defendants Pomerleau and DuBois "secured by terrorization, intimidation, coercion, grants of immunity and payments of money, *inter alia*, the agreement of three former members of the Black Panther Party, viz. Mahoney Kebe, Arnold Loney and Donald Vaughan, to serve as false witnesses before a Grand Jury of Baltimore City, Maryland and at the subsequent criminal trial of those persons indicted thereby for allegedly participating in the said torture and murder of Anderson, including Plaintiff Turco herein."

By way of more specific factual allegation, Plaintiffs, in paragraph 22 of the Complaint, alleged that at the criminal trial of the Plaintiff Turco in June and July, 1971 the whole testimony of state witness Mahoney Kebe was ordered stricken by Judge Murphy "after it was shown by irrefutable documentary evidence that the witness had willfully and deliberately perjured himself as to a material fact", that another witness, one Sam Walters, was induced or encouraged to testify falsely to procure the conviction of Plaintiff Turco and that a third witness, Donald Vaughan who allegedly refreshed his recollection from a statement he had read and initialed, was shown to be illiterate and unable to read, a fact which was allegedly known to some or all of the defendants but "which they willfully, deliberately and malici-

ously withheld from both Judge Murphy and Plaintiff Turco * * * ".

The plaintiffs allege in paragraph 29 of the Complaint that they have no adequate remedy at law. The relief they seek is:

(1) A permanent injunction

(a) restraining the defendants from interfering with the Constitutional rights of the Plaintiffs;

(b) restraining the defendants from infiltrating, surveilling or otherwise interfering with the activities of the Black Panther Party in exercising the rights allegedly granted to the Party and its members by the Constitution of the United States;

(c) restraining the defendants from instituting or continuing criminal proceedings against the Plaintiff Turco;

(d) ordering defendants to discontinue forthwith the criminal proceedings against the Plaintiff Turco;

(2) An interlocutory injunction restraining the defendants from instituting or continuing the criminal proceedings against Plaintiff Turco or from infiltrating, surveilling or otherwise interfering with the activities of the Black Panther Party;

(3) A declaratory judgment that the conduct of the defendants in presenting the testimony of the witnesses Kebe, Walters and Vaughan at the criminal trial of Turco and in infiltrating, surveilling or otherwise interfering with the activities of the Black Panther Party is unconstitutional;

(4) That the Plaintiff Turco be granted a judgment and damages against some or all of the defendants in the sum of one million dollars.

Following the filing of the Complaint, several motions to dismiss were filed on

behalf of the defendants based on the following main contentions:

(1) Under general principles of comity this Court should decline to interfere with the already pending state court criminal prosecution because no emergency or irreparable injury has been shown to justify federal interference by injunction;

(2) Issuance of any injunction would be contrary to the so-called anti-injunction statute, Title 28 U.S.C. Section 2283, and the equitable remedy of injunction afforded by Title 42 U.S.C. Section 1983 does not come within any of the exceptions set out in Title 28 U.S.C. Section 2283;

(3) The Federal Court should not interfere with the information-gathering or surveillance activities of state law enforcement agencies;

(4) The defendants Milton B. Allen and Hilary D. Caplan are entitled to immunity from suit for acts undertaken in their official capacities as public prosecutors;

(5) The defendants Pomerleau and DuBois cannot be held liable in damages for alleged bad faith actions of their subordinates in the Police Department; and

(6) The plaintiffs have not complied with the requirements for a valid class action.

The Court held an all-day hearing on all of the pending motions on November 4, 1971. At the hearing counsel for the plaintiffs urged the Court to grant an evidentiary hearing at which plaintiffs could offer testimony on the issue of whether the State prosecution was brought in bad faith with the knowledge and direct participation of the defendants. The defendants met this request with the contention that plaintiffs could make their Constitutional point by utilizing available procedures under State criminal law and by pursuing their remedies through the State Courts.

Counsel for the plaintiffs indicated that if an evidentiary hearing were granted, the testimony of witnesses would be produced to show that the defendant police officials knowingly developed and the defendant prosecutors knowingly later utilized false and perjured testimony in an effort to convict Mr. Turco.

■ No reason appears why the point the plaintiffs wish to raise at an evidentiary hearing in this Court could not be made in the Criminal Court of Baltimore City where the case against Mr. Turco is presently pending. If there is validity to his claim that the prosecution knowingly sought and used perjured testimony, there is no reason for this Court to assume that the Criminal Court of Baltimore City will not be fully as zealous in protecting the rights of the Plaintiff Turco as this Court trusts it would be if confronted with the same question. Under Rule 725 of the Maryland Rules of Procedure, provision is made for motions before trial to raise defenses and objections based on defects in the institution of the prosecution. The rule contemplates either a motion to dismiss or a motion "to grant appropriate relief". Such a motion may be supported by affidavit and shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue. The rule further provides (Rule 725d) that "all issues of fact raised by such motion may be determined by the court without a jury on affidavit or in such other manner as the court may direct." A virtually identical provision may be found in Rule 12 (b) (4) of the Federal Rules of Criminal Procedure. This rule certainly appears broad enough in its terms to give counsel for Mr. Turco full scope to present to the judge who is to try the case all of his contentions about the invalidity of the prosecution and to make a full record to preserve the point on appeal if he is aggrieved by the ruling of the trial judge.

The Court feels, based on the stipulation by plaintiffs' counsel that the jury which tried Mr. Turco stood 9 to 3 for conviction at the time of their discharge that there is no substance to the con-

tention that the state prosecution was brought "without reasonable expectation of eventual success" as alleged in the Complaint. If there is any merit to plaintiffs' contention of a bad faith prosecution, that determination should be made by the courts of Maryland which have supervisory power over the prosecution and which are fully capable of judging the bona fides of prosecuting officers who appear before them.

Any evidentiary hearing which this Court might hold, even if there were a legal basis for it, could serve only to disturb the delicate balance between federal and state relations. The notoriety and publicity attendant upon such a hearing could serve only to hamper and perhaps seriously delay the state prosecution, whatever the outcome of the hearing. A collateral inquiry of this nature by a federal court might well result in what Justice Black of the Supreme Court had in mind when he stated in Cameron v. Johnson, 381 U.S. 741 at 743 (Footnote 2) 85 S.Ct. 1751 at 1753, 14 L.Ed. 2d 715:

"Today's decision appears to add more devices to the collection of delaying tactics by which state criminal defendants may use collateral litigation in the federal courts to prevent their prosecutions in state courts from coming to trial for many years, if ever."

Further, this Court is fully satisfied that under general principles of comity and in view of the express statutory prohibition in 28 U.S.C.A. Section 2283 against federal courts enjoining state proceedings, it should not assert its equity jurisdiction to interfere in any way in the pending state court criminal prosecution of Plaintiff Turco.

There is ample authority supporting the policy of abstention from interference in state criminal proceedings. In Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), the plaintiff Stefanelli had been indicted by the State of New Jersey for bookmaking. He sued in the federal court under the Civil Rights Act (R.S. Section 1979, 8 U.S.C. Section 43) seeking an injunction against the use in the then pending state proceeding of bookmaking materials claimed to have been seized in a search of his home by police officers without legal authority. The district court refused to grant an injunction and dismissed the complaint. This action was affirmed in the Court of Appeals (Stefanelli v. Malanga, 184 F.2d 575, 3rd Cir. 1950). The Supreme Court also approved this disposition and Mr. Justice Frankfurter, in the course of his majority opinion, took occasion to say (at page 123 of 342 U.S., at page 121 of 72 S.Ct.):

"The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law— with its far-flung and undefined range —would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court— all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.

"Mr. Justice Holmes dealt with this problem in a situation especially appealing: 'The relation of the United States and the Courts of the United States to the States and the Courts of the States is a very delicate matter that has occupied the thoughts of statesmen and judges for a hundred years and can not be disposed of by a summary statement that justice requires me to cut red tape and to in-

tervene.' Memorandum of Mr. Justice Holmes in 5 The Sacco-Vanzetti Case, Transcript of the Record (Henry Holt & Co., 1929) 5516. A proper respect for those relations requires that the judgment below be affirmed."

Later in the case of Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963), the plaintiff brought action in a federal district court for an injunction against a state officer to prevent him from testifying in a state criminal proceeding to incriminating statements which the state officer had heard the plaintiff make while being illegally detained and questioned by federal officers. Mr. Justice Harlan, speaking for the Supreme Court, relied on Mr. Justice Frankfurter's opinion in *Stefanelli* in affirming the denial of the injunction and observed: (at page 400 of 371 U.S., at page 390 of 83 S.Ct.):

"The withholding of injunctive relief against this state official does not deprive respondent of the opportunity for federal correction of any denial of federal constitutional rights in the state proceedings. To the extent that such rights have been violated, cf., e. g., Mapp v. Ohio [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081], *supra*, he may raise the objection in the state courts and then seek review in this Court of an adverse determination by the New York Court of Appeals. To permit such claims to be litigated collaterally, as is sought here, would in effect frustrate the deep-seated federal policy against piecemeal review."

While *Stefanelli* and *Cleary* are persuasive authority in resolving the matter presently before the Court, counsel for the Plaintiff Turco contend that such precedents lose much of their force in view of the Supreme Court's decision in the important case of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1964). In *Dombrowski*, the plaintiffs invoked relief under the Civil Rights Act, 42 U.S.C. Section 1983, to prevent by injunction their threatened prosecution under Louisiana's Subver-

sive Activities and Communist Control law and Communist Propaganda Control law which the complaint alleged were so broad and vague on their face that they interfered with First Amendment guaranties of freedom of expression.

■ The Court did not feel inhibited by the anti-injunction statute (28 U.S.C.A. Section 2283), as it observed that this statute does not preclude injunctions against the commencement of state court proceedings, but only bars stays of suits already instituted. The Court felt that the factual situation merited an exception to the abstention doctrine because, as Mr. Justice Brennan stated (at pages 486 and 487, 85 S.Ct. at page 1120):

"A criminal prosecution under a statute regulating expression usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment freedoms. * * * The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure."

Mr. Kuntsler, counsel for Plaintiff Turco who also represented the plaintiffs in *Dombrowski*, seeks to analogize the present case to *Drombrowski* in one respect by asserting that the state court prosecution denies "to Plaintiff Turco his fundamental right of free speech, assembly and association as well as his right to petition for redress of grievances, all in violation of the First and Fourteenth Amendments to the Constitution of the United States (Complaint, paragraph 24(c))." The Court is unable to perceive how Mr. Turco is deprived of freedom of speech to any greater extent than would be any person who is charged as accessory to the fact of murder, conspiracy to murder, assault with intent to murder, assault, solicitation to murder and soliciation to kidnapping. The unique factual setting present in *Dombrowski* certainly does not appear to exist here and Mr. Turco's prosecution in the Criminal Court of Baltimore City is no where alleged to be brought under a

statute void for vagueness or overbreadth.

Mr. Justice Black, in his dissent in Cameron v. Johnson, 381 U.S. 741, at pages 752–753, 85 S.Ct. 1751, at page 1757, 14 L.Ed.2d 715 foreshadowed a limitation on the thrust of this decision when he said:

"I cannot believe for one moment that this Court in *Dombrowski* intended to authorize federal injunctions completely suspending all enforcement of a constitutionally valid state criminal law merely because state defendants allege that state officials are about to harass them by doing no more than enforcing that valid law against them in the state courts. If *Dombrowski* held any such thing, I think the quicker that case is reconsidered in order to give it a 'limiting construction' the better it will be for the courts, the States, the United States and the people in this country who want to live in an atmosphere of peace and quiet. Creating new hurdles to the conviction of people who violate valid laws cannot be ranked as one of the most pressing and exigent needs of the times, to say the least. \* \* \*

"The record in this case tells us that there are probably hundreds of cases like these in one State alone. It is not difficult to foresee that reversal of the District Court's denial of injunction here will be a signal and invitation for many, many more efforts to tie the hands of state officials in many more States on charges that threatened prosecutions under valid laws are prompted by a desire to harass. Much has been said of late about the threat to prompt and efficient administration of justice from the increasing workload of our United States courts. If that is a valid argument in deciding cases, *it is not amiss to point out that the rule which the Court implicitly adopts here is bound to bring an ever-increasing number of cases into federal courts, where state prosecutions will be enjoined until a federal court can first weigh the motives of state officials in instituting prosecutions.* This of course means more and more delays between the arrests of people accused of violating state laws and their trials. The law's delays—which many believe are really a guilty man's most effective defense—are bound to be multiplied beyond measure. Moreover it should not be forgotten that this is a big country—too big to expect the Federal Government to take over the creation and enforcement of local criminal laws throughout the country. The Nation was not formed with any such purpose in mind. It is wise and right and in conformity with the national governmental plan for federal courts to be vigilant and alert to protect federally guaranteed rights. But we put too much strain on the federal courts if we bodily transfer from state- to federal-court jurisdiction what is, in effect, the initial step in the trial of persons charged with violating state or local criminal laws which are far from being unconstitutional on their face. The Federal Constitution certainly does not require us to do it and, in my judgment, forbids it." (Emphasis supplied).

Professor Charles Alan Wright of the University of Texas, in his work "Law of Federal Courts" (2d Edition, 1970), seemed to be thinking along the same lines as Mr. Justice Black when he stated at page 208, "In 1969 the Court ordered reargument in four *Dombrowski*-type cases it had once heard. It is to be hoped that the decision in these cases will clarify the meaning of *Dombrowski* and will establish that every person prosecuted under state law for conduct arguably protected by the First Amendment cannot, by murmuring the words 'chilling effect', halt the state prosecution while a federal court, ordinarily of three judges, passes on the validity of the statute and the bona fides of the state law enforcement officers."

The anticipated elucidation of *Dombrowski* came on February 23, 1971 when

the Supreme Court decided six cases which cast a broad light over the whole field.[1]

In all of the cases decided on February 23, 1971, except Boyle v. Landry, the federal court plaintiff was already a defendant in the state court criminal prosecution. Perhaps the most often cited of the six cases is Younger v. Harris. Appropriately enough, the majority opinion is by Mr. Justice Black who, in *Cameron*, expressed the hope for a "limiting construction" on *Dombrowski*. On a reading of Younger v. Harris, it seems clear that *Dombrowski* is now confined within very narrow grounds, and it is significant that the exponent of the confinement, Mr. Justice Black, has over a lengthy judicial career been the Supreme Court's foremost exponent of the protection of First Amendment rights.

Mr. Justice Black in *Younger* made it perfectly clear that the district court was in error in reading *Dombrowski* as substantially broadening the availability of injunctions against state criminal prosecutions and investing federal courts with the right to give equitable relief without regard to any showing of bad faith or harassment whenever a state statute is found "on its face" to be vague or overly broad, in violation of the First Amendment. As Justice Black stated, at page 755 of 91 S.Ct.:

"For these reasons, fundamental not only to our federal system but also to the basic functions of the Judicial Branch of the National Government under our Constitution, we hold that the *Dombrowski* decision should not be regarded as having upset the settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions. We do not think that opinion stands for the proposition that a federal court can properly enjoin enforcement of a statute solely on the basis of a showing that the statute "on its face" abridges First Amendment rights."

Counsel for the Plaintiff Turco argues, however, that *Younger* left in force the second "wing" of *Dombrowski*, because of Justice Black's comment that "Appellee Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." He urges that they are basing their suit on alleged bad faith, and this is all that is needed to support federal court interference with the state prosecution. However, the Court is satisfied that Justice Black had something much more specific in mind as necessary to support injunctive relief. After reviewing the history of the abstention doctrine in the federal courts, he noted (at age 751 of 91 S.Ct.):

"In all of these cases the court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' *Fenner* [v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927], *supra*. Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution."

This Court holds that in the present case there is no reason for it to inquire into whether or not the state prosecution is brought in bad faith for two

1. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792.

reasons: (1) If there is any threat to the plaintiff's rights by an alleged bad faith prosecution, he can seek to eliminate it in his defense in the state court "against a single criminal prosecution." (2) Justice Black's comment about "bad faith" at the end of the *Younger* opinion must be read against the background that he was dealing with a California syndicalism statute directed against the spoken and the written word, a statute, the plaintiff contended, whose very existence and use by the prosecution inhibited Harris' rights of free speech and press. It did not, as in the case at bar, involve a prosecution under long established state criminal statutes without First Amendment overtones. Justice Fortas, in his dissent in Cameron v. Johnson, 390 U.S. 611 at 623, 88 S.Ct. 1335, 1342, 20 L.Ed.2d 182, articulated this distinction as follows:

> "*Dombrowski's* remedy is justified only when First Amendment rights, which are basic to our freedom, are imperiled by calculated, deliberate state assault. And those who seek federal intervention bear a heavy burden to show that the state, in prosecuting them, is not engaged in use of its police power for legitimate ends, but is deliberately invoking it to harass or suppress First Amendment rights. *Dombrowski* should never be involved when the State is, in substance and truth, engaged in the enforcement of valid criminal laws."

This Court, therefore, would deny plaintiffs' application for an interlocutory and permanent injunction for the same reasons outlined above. The Court also declines to enter the declaratory judgment prayed for. As the Supreme Court stated in Samuels v. Mackell, 91 S.Ct. 764 at 768:

> "We therefore hold that, in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and

that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well."

### The Anti-Injunction Statute

As Justice Black noted in *Younger*, in 1793, 1 Stat. 335, the Congress passed an act which unconditionally provided:

> "* * * nor shall a writ of injunction be granted to stay proceedings in any court of any state * * *."

In the 177 years since that time the statutory exceptions to the 1793 Congressional Enactment have been only three:

(1) "* * * except as expressly authorized by Act of Congress * * *";

(2) "* * * where necessary in aid of its jurisdiction * * *";

(3) "* * * to protect or effectuate its judgments * * *."

Plaintiffs' counsel in this case urge upon the Court that the injunction provision of the Civil Rights Act comes within exception (1) above as an expressed authorization by Act of Congress. Although the Supreme Court has many times referred to the anti-injunction statute in Civil Rights cases where injunctive relief was denied, the denial of such relief has been grounded on general equity principles and on at least three separate occasions the Supreme Court has declined to rule on whether 42 U.S.C. Section 1983 creates an exception to Section 2283. Dombrowski v. Pfister, footnote 2 at page 484 of 380 U.S. at page 1119 of 85 S.Ct.; Cameron v. Johnson, footnote 3 at page 613 of 390 U.S. at page 1337 of 88 S.Ct.; Younger v. Harris, at page 755 of 91 S.Ct.

The matter, at least in the Fourth Circuit, has been set at rest by the exhaustive and often-cited opinion of then Circuit Judge, now Chief Judge Haynsworth in Baines v. City of Danville, 337 F.2d 579 (1964), holding that the Civil Rights Act does not constitute an exception to the mandate of Section 2283. Judge Haynsworth pointed out

(at page 591 of 337 F.2d) that his finding was supported by the fact that the Supreme Court had consistently supported the abstention principle on which Section 2283 is based in determining civil rights cases. Although the Supreme Court has chosen to rely on general considerations of equity and comity in requiring or sanctioning federal forbearance, it would be difficult, as Judge Haynsworth pointed out, to see how "an unqualified congressional command to the same end can be ignored."[2]

For the Supreme Court to reach a result opposite to that enunciated by Judge Haynsworth in Baines v. City of Danville, it would have to accept the view of a small minority of lower courts that Civil Rights actions are in some fashion an exception to Section 2283. On the other hand, there are a very respectable number of well-reasoned lower court decisions which reach the same result as did the Fourth Circuit in *Baines*. Cameron v. Johnson, 262 F.Supp. 873, 878 (S. D.Miss., 1966); Brock v. Schiro, 264 F. Supp. 330, 336–337 (E.D.La., 1967); Brooks v. Briley, 274 F.Supp. 538, 552– 553 (N.D.Tenn., 1967); Mackay v. Nesbett, 285 F.Supp. 498, 501 (D.Alaska, 1968); Machesky v. Bizzell, 288 F.Supp. 295, 302 (N.D.Miss., 1968); Nichols v. Vance, 293 F.Supp. 680, 682 (S.D.Texas, 1968); Wilson v. Simon, 299 F.Supp. 305, 309 (N.D.Ill., 1969); Rage Books, Inc. v. Leary, 301 F.Supp. 546, 551 (S. D.N.Y., 1969); Cole v. Graybeal, 313 F. Supp. 48, 49 (W.D.Va., 1970); Eve Productions, Inc. v. Shannon, 312 F.Supp. 26, 28 (E.D.Mo., 1970); Smith v. Village of Lansing, 241 F.2d 856, 859, 7th Cir., 1957; Wojcik v. Palmer, 318 F.2d 171, 173, 7th Cir., 1963.

A similar result involving the injunction provisions of the Clayton Act was reached by then District Judge Winter in Potter v. Carvel Stores of New York,

Inc., 203 F.Supp. 462, 465 (D.Md., 1962), affirmed, 314 F.2d 45, 4th Cir. 1963.

For the reasons above stated, the Court declines to grant any interlocutory or permanent injunction against the State Court's prosecution of the Plaintiff Turco because of this Court's view that Title 28, Section 2283 is an absolute prohibition against such action.

■ With regard to plaintiffs' Prayers for Relief 1(b), 2(b) and 3(2) insofar as they seek injunctive or declaratory relief against "infiltrating" or "surveilling" the Black Panther Party, there are no factual allegations in the Complaint to support these prayers for relief and counsel for plaintiffs did not press these claims at the argument on the motions. Since they have no apparent factual or legal basis, these Prayers for Relief are denied.

In view of the Court's rulings in this opinion, the Court at this time takes no action with regard to the claim of the Plaintiff Turco for One Million Dollars in damages pending final resolution of the State Court proceedings. For the same reason, the Court does not find it necessary to rule at this time on whether the respective defendants have a valid defense on the ground of immunity as asserted at the argument on the motions to dismiss and the Court intimates no opinion thereon. Resolution of these matters will abide the outcome of the State Court proceeding.

The Court has received on November 5, 1971, after the hearing on the motions, a petition of the National Lawyers Guild for leave to file as amicus curiae in support of the plaintiffs. This request comes too late as far as determination of the issues resolved in this opinion are concerned. The Court will reconsider the Petition of the Guild if and when it becomes necessary for the Court to

2. Judge Haynsworth has some support from Professor Wright in his work "Law of Federal Courts", 2d Edition, page 181: "it is probably not enough that the other Act merely gives general jurisdiction to issue injunctions—as is the case most importantly, with the Civil Rights Act—but this is not yet settled beyond dispute."

again consider the matters not finally ruled on in this opinion.

In summary, it is hereby ordered:

(A) That the plaintiffs' request that a permanent injunction issue (Prayer for Relief paragraphs 1(a), 1(b), 1(c) and 1(d)) be, and the same hereby is, denied.

(B) That the plaintiffs' request for an interlocutory injunction (Prayer for Relief paragraph 2) be, and the same hereby is, denied.

(C) That the plaintiffs' request for judgment contained in Prayer for Relief paragraph 3 be, and the same hereby is, denied.

(D) That any ruling on the demand of Plaintiff Turco for One Million Dollars in damages be deferred until further proceedings are had following the final determination in all courts of the State of Maryland and the United States Supreme Court of the charges currently pending against the Plaintiff Turco in the Criminal Court of Baltimore City.

(E) That in view of the Court's rulings in (A), (B) and (C) above, the Motion of Defendants to Dismiss Plaintiffs' Bill of Complaint as a Class Action be, and the same hereby is, declared "Moot."

(F) That the Court hereby grants those parts of Defendants' Motion to Dismiss Plaintiffs' Bill of Complaint which assert that principles of comity and federalism demand and also that Title 28, U.S.C.A. Section 2283 requires that this Court abstain from granting an interlocutory or permanent injunction or a declaratory judgment as sought by plaintiffs.

(G) That determination of the Motion of Defendant Hilary D. Caplan to dismiss that part of the complaint filed against him individually and also determination of that part of the Motion to Dismiss of the other defendants based on claims of immunity be deferred until the Court ascertains what matters in this suit remain for adjudication following final termination of the criminal proceedings against the Plaintiff Turco in the State Courts.